CASE No. 892.

STATE v. WILLIAMS.

1. This court will not follow a former decision standing alone, without regard to the grounds upon which such decision was based.   The principle of *stare decisis* stated.
2. The Court of General Sessions has jurisdiction of cases of petit larceny, as the punishment therefor provided by law is not limited to a fine of $100, or imprisonment for thirty days.   *Const., Art. I., § 19.*
3. *State* v. *Harper,* 6 *S. C.* 464, overruled.

Before HUDSON, J., Chesterfield, February, 1880.

The defendant, Jacob Williams, was convicted of petit larceny, under an indictment charging him with the larceny of two wagon wheels and two taps, of the value of $22, in October, 1879.

The report of the presiding judge is as follows :

There was conflicting testimony upon the question of the value of the property alleged to have been stolen, as well as upon the question of the guilt of the defendant.   The weight of the testimony was, in the opinion of the court, in favor of a valuation above $20.   The jury, however, being the sole and exclusive judges of the testimony, under full instruction from the court as to the law of the case, and the distinction between grand and petit larceny, rendered a verdict against the defendant for the latter.   Whereupon his attorney moved the court in arrest of judgment and to discharge the defendant, upon the ground that the Court of General Sessions is without jurisdiction of the crime of petit larceny, and without authority to pronounce sentence

upon the defendant in this case. After full argument by the solicitor and counsel for the defendant upon the motion, it was overruled, and the defendant was sentenced to six months confinement in the state penitentiary at hard labor.

In support of the judgment, I assign the following reasons: The case of *State* v. *Harper*, 6 *S. C.* 464, is relied upon by the defendant's counsel as conclusive of the law of this case. I am aware of the grave responsibility I have taken in disregarding that case, but I know that there is widespread dissatisfaction among the lawyers of the state with the law as therein announced, and a general desire that it be reviewed and re-affirmed or overruled. In no way can this be effected, so far as I can see, unless it be by appeal from a Circuit judgment in conflict with it. Such a judgment I have rendered in the present case, because the law of that case (State v. Harper) has never carried conviction to my mind, and is a fruitful source of embarrassment in administering the law of larceny in the state. After a careful examination of the constitution of the state and the law of the land, I can find nothing which prohibits the Court of General Sessions from pronouncing judgment upon a verdict like the one rendered in this instance. It is a well-established doctrine of criminal law and practice, that if one be charged with a grave offence, which includes one of an inferior degree, the jury may discharge the defendant of the higher crime and convict him of the less atrocious, and judgment will be pronounced for the lesser crime so found, unless authority so to do is denied the court by clear and binding negative enactment. Neither in the constitution nor the statute law does it appear that to the Court of General Sessions is jurisdiction of the crime of petit larceny denied; Section 18, Article IV. of the constitution, gives to it "*exclusive* jurisdiction of all crimes not otherwise provided for by law." Clearly, then, if the jurisdiction of a crime is otherwise provided for by law, the exclusive jurisdiction of the Court of General Sessions would be taken away, but not its *jurisdiction;* that would remain and be *concurrent* with that of the other tribunal, unless to the inferior tribunal *exclusive* jurisdiction should be given, or unless to the superior tribunal all jurisdiction should be *in totidem verbis,* denied. The Court of General Sessions retains exclusive juris-

diction over any and all crimes, unless jurisdiction thereof be conferred upon an inferior court, in which event the two would hold concurrent jurisdiction. But if, in the enactment, jurisdiction is entirely denied to the Court of General Sessions, or exclusive jurisdiction is conferred upon the inferior courts, then, and not otherwise, does the Court of General Sessions lose its authority.

A statute, which simply confers jurisdiction of a crime on an inferior court generally and not exclusively, cannot be construed to deprive the Court of General Sessions of its jurisdiction, but the jurisdiction would remain concurrent with that of the inferior court. The language of the constitution in Section 18, Article IV., is broader and more comprehensive in preserving a general criminal jurisdiction to the Courts of General Sessions, than it is in Sections 15 and 16 of the same article, in conferring a general civil jurisdiction upon the Courts of Common Pleas, yet the Supreme Court has not hesitated to declare that the latter court has concurrent civil jurisdiction of contracts, in which jurisdiction has, by the constitution, been given to justices of the peace, and by statute to trial justices. See *Burge* v. *Willis*, 5 *S. C.* 212.

The reasoning of the court in this case is pithy, satisfactory and conclusive, and is in harmony with the uniform tenor of decisions of the courts of England and America in similar cases.

It accords with the judgment of our own Court of Appeals in *State* v. *Walker*, 14 *Rich*. 37, and *State* v. *Sullivan*, 14 *Rich*. 282, and the cases therein cited; and also accords with the reasoning and judgment of our Supreme Court in *State* v. *Simmons*, 4 *S. C.* 72. All these cases were relied upon by Attorney-General Melton in his able argument in State v. Harper, but they are summarily disposed of by the chief justice in the conclusion of the judgment, by the declaration that they have no application to the point presented in State v. Harper. These cases and the cases from England, cited by the court, all hold the doctrine as one unquestioned, that "nothing shall be intended to be without the jurisdiction of a superior court but that which specially appears to be so, and nothing shall be intended to be without the jurisdiction of an inferior court but that which is expressly alleged." In Burge v. Willis, it is declared that when a court is vested

with general original jurisdiction under the constitution, it cannot be divested of that jurisdiction by the legislature establishing another court with the same or a like jurisdiction. " Unless there be that in the constitution of the state which deprives the Court of General Sessions of jurisdiction of the crime of petit larceny, or which empowers the legislature to do so, it is clear, upon authority, that the jurisdiction remains. The most that can be said is, that the constitution, by Section 19, Article 'I., confers exclusive jurisdiction upon justices of the peace, or other officers authorized by law (to wit, trial justices,) of ' offences less than felony, and in which the punishment does not exceed a fine of one hundred dollars or imprisonment for thirty days;' and in Section 22 of Article IV., jurisdiction of prosecutions for assault and battery and other penal offences less than felony, punishable by fine only."

It certainly cannot be successfully contended that the crime of petit larceny is embraced in either of these sections, nor has the legislature, since the adoption of the constitution, by any enactment, so defined the crime of petit larceny, and limited its punishment as to bring it within the category of offences set forth in either of said sections. From a proper construction of the acts of the legislature in connection with the strong language of the constitution in Article IV., Section 18, I am more inclined to the opinion that courts of trial justice are entirely without jurisdiction of the crime of petit larceny, than I am to the opinion that they have exclusive jurisdiction of that grave offence, separated, as it often is, from the felony of grand larceny, by a distinction scarcely perceptible, and sometimes infinitessimal. For the crime of grand larceny, to wit, the stealing of goods of the value of $20, a convict may be and often is punished by confinement at hard labor in the state penitentiary for years, while, under the law of State *v.* Harper, one guilty of stealing goods of the value of $19, under the most aggravating circumstances, cannot be punished by imprisonment exceeding thirty days in the county jail, nor by fine exceeding $100, which fine, in ninety-nine cases out of a hundred, is nugatory, because of the poverty of the convict. It would require the law to be so written in the most explicit terms to convince a rational mind that the legisla-

ture or the people in convention assembled, intended that it should be thus. A distinction so utterly at variance with common sense and justice, cannot be rectified by the law-making power of the land too soon, if it exists in the constitution or in the statute law. We are constrained to think that a correct interpretation of the constitution and laws of the state will remove this anomaly and bring order out of confusion, regarding the crime of larceny.

To justices of the peace represented by trial justices, the constitution gives jurisdiction of the crime of assault and battery, yet the Courts of General Sessions are constantly trying accusations of this offence. Original jurisdiction in cases of bastardy is also conferred upon this inferior tribunal, and yet numerous cases of bastardy are being tried in the superior court; and so of the whole catalogue of misdemeanors, except this most aggravated of all, petit larceny, and for its commission a premium is held out by making the punishment thereof a mere farce.

Chief Justice Moses, in delivering the opinion of the court in State *v.* Harper, on page 471, in speaking of the intention of the framers of the constitution, says: "Their purpose, it may well be supposed, was to create, by Section 19, Article I., of the constitution, an exclusive jurisdiction of such offences, less than felony, in regard to which the general assembly might, from time to time, annex as a punishment a fine not to exceed $100, or imprisonment not exceeding thirty days."

But this is just what the legislature has not done as to petit larceny, and having failed so to limit and define its punishment, it remains an offence cognizable by the Courts of General Sessions.

The grounds of appeal by defendant were upon the grounds that the motion in arrest of judgment was improperly overruled; that the court was bound to follow the decision in State *v.* Harper; that the Court of General Sessions had no jurisdiction to try or punish the offence of petit larceny, jurisdiction being exclusively vested in courts of trial justices; that the verdict was equivalent to an acquittal; and that the conviction was improper, as the indictment charged a common law offence.

*Mr. W. L. T. Prince,* for appellant.

1. The common law does not confer jurisdiction upon any particular courts, but merely makes an offence indictable, and the constitution and statute law fixes the forum before which it is to be tried.

2. The constitution vests the whole judicial power of the state in a Supreme Court, a Court of Common Pleas, a Court of General Sessions, a Court of Probate, and a Court of Justices of the Peace, at the same time authorizing the general assembly to establish such municipal and other inferior courts as may be deemed necessary. *Art. IV.,* § 1.

3. To the Court of General Sessions which, by Article IV., Section 1, has "criminal jurisdiction only," the constitution gives "exclusive jurisdiction over all criminal cases which shall not be otherwise provided for by law." *Art. IV.,* § 18.

The *only* jurisdiction, then, conferred by the constitution upon the Court of General Sessions, when, by that instrument, it was meant to distribute among the different courts the judicial power of the state, may be stated thus : "It shall have none other than *criminal* jurisdiction and that shall be *exclusive,* but its jurisdiction shall be restricted to cases which shall not otherwise be provided for by law."

4. Original jurisdiction in "penal offences less than felony punishable by fines only" is conferred on justices of the peace, and, therefore, are not cognizable by the Court of General Sessions. *Art. IV.,* § 21.

5. Already jurisdiction had been given to "justices of the peace or other officers authorized by law" to try summarily "all offences less than felony, and in which the punishment does not exceed a fine of $100, *or* imprisonment for thirty days," and of such offences the General Sessions could have no jurisdiction. *Art. I.,* § 19.

Here the constitution, having conferred no other criminal jurisdiction on the Court of Sessions than an *exclusive* jurisdiction *in cases not otherwise provided for,* and having "otherwise provided" for cases less than felony, &c., ceases to speak, and we must turn to the statute law and the rulings of the Supreme Court to ascertain further and more certainly the *extent* of the

"criminal jurisdiction only," meant to be conferred upon the Court of General Sessions by Article IV., Section 1, and the *subjects* of the "exclusive jurisdiction" conferred by Section 18 of the same article of the constitution.

6. In 1866, before the adoption of the constitution, the general assembly had declared the simple larceny of property below the value of $20 to be a misdemeanor, and considered a petit larceny. · 13 *Stat.* 407.

7. By authority of Article IV., Section 1, of the constitution, the general assembly *did* establish the inferior court of trial justice with "jurisdiction of all offences which *may be* subject to the penalties of *either* fine *or* forfeiture not exceeding $100, *or* imprisonment in the jail or work-house not exceeding thirty days." Also to "*have jurisdiction of larcenies*  *  *  *  if the property stolen does not exceed $20 in value.*" The jurisdiction of the Court of Sessions in no case being *concurrent* with any other court, but always *exclusive*, this legislation deprives it of power to hear and determine such causes. 14 *Stat.* 402–3.

8. Trial justices are the "other officers" referred to in Article IV., Section 1, of the constitution, and have all the jurisdiction conferred upon justices of the peace. *State* v. *Fillebrown*, 2 *S. C.* 404.

9. If the Court of Sessions had jurisdiction of petit larcenies, the constitution has taken it away by conferring it on another court, for where a new forum is created for the trial of offences which belonged to another, the old tribunal is deprived of authority. *Righton* v. *Wood, Dud.* 167 ; *McIver* v. *State*, 2 *S. C.* 1 ; *State* v. *Fillebrown*, 2 *S. C.* 408 ; *State* v. *Harper*, 6 *S. C.* 464.

10. The statute having created a misdemeanor of what was before a felony, the old law is gone, and the offender must be indicted under the new, and, of course, before the court to which jurisdiction of the new offence is given. *State* v. *Wright*, 4 *McC.* 358 ; *Burton* v. *Watkins*, 2 *Hill* 674 ; 1 *Bish. on Cr. L.* 210, 638 ; *State* v. *Raines*, 3 *McC.* 533.

11. The indictment should have been under the statute to warrant a conviction for petit larceny which is now only a statutory offence. 1 *Bish. on Cr. L.* 210, 638 ; 1 *Bla.* 89 ;

*State* v. *Ripley*, 2 *Brev.* 300 ; *State* v. *Wright*, 4 *McC.* 358 ; *Burton* v. *Watkins*, 2 *Hill* 674 ; *State* v. *McLain*, 2 *Brev.* 443 ; *State* v. *Fleming*, 2 *Strob.* 470 ; *State* v. *Gray*, 14 *Rich.* 174.

12. There can be no conviction for a misdemeanor under an indictment for a felony. This is the well settled principle in English law. Otherwise a defendant might be deprived of privileges and advantages allowed in charges of misdemeanor, which are not allowed in cases of felony, and the charges are repugnant. 1 *Bish. on Cr. L.* 814–15–87. See, also, *State* v. *Wheeler*, 3 *Vt.* 344 ; *State* v. *Smith*, *MS.*, *Dec.*, 1813 ; *State* v. *Fant et al.*, *Brev.*, [*MS.*] ; *State* v. *Howe*, 1 *Rich.* 260.

This common law rule is overturned by statute in some of the states, but not in this. It is only where there is a *court* for a misdemeanor as well as for a felony, that convictions for the former in the same indictment have been sustained; and before the cases of *State* v. *Boise & Stuke*, 1 *McM.* 189 ; *State* v. *Posey*, 7 *Rich.* 490, it was held in this state that felonies and misdemeanors could not be charged in the same indictment. State *v.* Smith, State *v.* Fant et al., State *v.* Howe, above noted.

13. To argue that because the greater includes the lesser offence, therefore, *in this case*, the defendant might be convicted of petit larceny, is to ignore the very question of *jurisdiction* which was raised before the Circuit judge—for want of jurisdiction may present an obstacle to such conviction. *State* v. *Raines*, 3 *McC.* 533 ; *Nelson* v. *State*, 10 *Humph. (Tenn.)* 518 ; *People* v. *Abbott*, 19 *Wend.* 192 ; *State* v. *Nutting*, 16 *Vt.* 261 ; 1 *Bish. on Cr. L.* 820.

14. The verdict was an acquittal of the offence charged as it did not conform to the indictment. *State* v. *Lohnman*, *Riley Cas.* 72 ; 3 *Hill* 67 ; *Phil. Ev.* 56 ; 1 *Bish. on Cr. L.* 814–15–20–87 ; *Freeman on Judg.* 318.

15. Judgment cannot be pronounced as written by the court. One convicted of misdemeanor for which no specific punishment is provided is only liable to fine and imprisonment *without* hard labor. *Russ. on Cr.* 92 ; *Stephen's Dig. Cr. L.* 15 ; *Rex* v. *Dunn*, 12 *Q. B.* 1041. The penitentiary is for the confinement of all offenders who shall have been convicted and sentenced according to law, to the punishment of *solitary* imprisonment or confinement therein *at hard* labor. 14 *Stat.* 92. The judgment

is erroneous, being for a punishment to which defendant is not legally subject. 1 *Bish. on Cr. L.* 213, 711.

*Mr. Solicitor Sellers,* contra.

July 20th, 1880. The opinion of the court was delivered by

WILLARD, C. J. The appellant was convicted of petit larceny in the General Sessions upon an indictment for grand larceny and sentenced to six months' imprisonment, at hard labor, in the penitentiary. An appeal is taken from the refusal of the General Sessions to arrest this judgment. The question involved is whether the General Sessions had jurisdiction to pronounce sentence upon the conviction of petit larceny. As the indictment charged grand larceny, there is no question of its proper pendency before the Court of General Sessions. It is contended on the one hand, that, under the ruling of this court, in *State* v. *Harper,* 6 *S. C.* 464, the General Sessions was without original jurisdiction in cases of petit larceny and could not give sentence upon a verdict of guilty of petit larceny.

In behalf of the state, it is claimed that the General Sessions has jurisdiction in case of petit larceny, and, at all events, after an indictment for the higher offence of grand larceny, could receive and act upon a verdict of guilty of petit larceny.

It is unquestionable that State v. Harper stands as an authority for reversing the judgment appealed from, and it becomes necessary to examine the validity of the ground on which the judgment in that case was rendered. When the court is asked to follow the line marked out by a single precedent case it is not at liberty to place its decision on the rule of *stare decisis* alone, without regard to the grounds on which the antecedent case was adjudicated. There are three elements that enter into the authority of a case claiming to stand as a leading case on the general principles of the law : *First,* the unanimity with which its judgment was pronounced ; *second,* the fact that it has been followed ; and, *third,* the duration of time during which it has been openly followed or tacitly assented to. As, then, the authority of such a case is distinctly fortified by the next succeeding case, it is obvious that in the decision of the latter the

solidity of the grounds of the former conclusion should be inquired into, for it is only where resort is had to the original sources and a concurring result obtained that the first decision can be said to be fortified by that which follows it. An original case could not possibly gain authority by a mere perfunctory following on the principle of *stare decisis*. No less careful scrutiny is demanded by the nature of questions that involve the distribution of public authority among the principal agencies of government and the establishment of the limits of judicial authority. To misconceive the fundamental principles that underlie the great structural features of the government is attended with at least as great evils as a misconception of the principles of the law; for while the latter may be connected in the ordinary course of legislative action the former demands organic changes in the government itself; and, although the frequency with which such changes have been made in our country in the past has tended to inspire the opinion that little danger or inconvenience attends structural revision of the government, yet there is reason for believing that the instability that must inevitably result when frequent resort is had to the authority alone competent to revise that structure is an evil to be carefully guarded against. The present question involves a construction of the constitution, claimed to have the effect of depriving the Court of General Sessions of part of the jurisdiction which it has always exercised and which has been exercised by the courts of common law, from which the Court of General Sessions was derived. We feel bound then to re-consider the correctness of the conclusion reached by the court in the State v. Harper.

The decision in State v. Harper was, in effect, that the offence of petit larceny was defined and the punishment applicable thereto prescribed by Section 5 of the act of March 1st, 1870. 14 *Stat.* 402. That under the proper construction of that act, the punishment in case of the larceny of goods of or under the value of $20 was not to exceed a fine of $100 and imprisonment for thirty days. That cases of petit larceny were, under the operation of that act, within the meaning of Section 19, Article I., of constitution, cases to be tried summarily before a " justice

of the peace and other officer authorized by law" on informa-
tion, under oath, without indictment, and of which a trial justice
has exclusive jurisdiction, from the circumstance that he is the
only officer *authorized by law* for that purpose, no provision hav-
ing been made by the legislature for the election of justices of
the peace.    Under this conclusion the court held that the General
Sessions was excluded from jurisdiction in all cases of petit
larceny.

The section of the act of 1870 which was construed in State
*v.* Harper is identical with the provisions of Section 12, Chapter
XXV., of the general statutes, subsequently enacted. *Gen. Stat.*
195.    That section is contained in the chapter prescribing the
powers and duties of trial justices, and is as follows: "They
shall have jurisdiction of larcenies by stealing of the property
of another, of money, goods or chattels, or any bank note, bond,
promissory note, bill of exchange, or other bill, order or certifi-
cate, or any book of accounts for or concerning money or goods
due, or to become due, or to be delivered, or any deed or writing
containing a conveyance of land or any other valuable contract,
release or defeasance, or any writ, process or public record, if
the property stolen does not exceed $20 in value."    No punish-
ment is prescribed by this section; but, apart from the correct-
ness of the view presented in State *v.* Harper, that will be
presently considered, this seeming omission is supplied by
another provision of the general statutes, taken from the act of
1866, (13 *Stat.* 407,) which is as follows: "Any simple larceny
of any article of goods, choses in action, bank bills, bills
receivable, chattels, or any article of personalty, of which, by
law, larceny may be committed; of all domesticated animals,
and animals *feræ naturæ*, which have in any degree been
subjected to the control of any owner, of all growing crops, or
parts thereof, of all annual products of the soil, whether
severed from the soil or not, and of all such fixtures and parts
of the soil as were severed from the soil by an unlawful act,
below the value of $20, shall be a misdemeanor and considered
a petit larceny."    Here the designation of the offence as a mis-
demeanor makes applicable to it the punishment provided by
law in case of misdemeanors.    It is clear that, so far as the

cases contained in these two sections are identical, the two sections are to be read *in pari materia*, and, such being the case, independent of the effect of any other statute or constitutional provision, the offence of petit larceny is to be considered a misdemeanor, punishable in excess of the quantity of punishment contemplated in Section 19, Article I., of the constitution. If any case can arise under Section 12, Chapter XXV., that cannot be brought under Section 12, Chapter CXXIX., such a case is not presented by the present appeal, and was not presented in State *v.* Harper, and need not be considered.

The conclusion reached in State *v.* Harper, arose from reading Section 12, Chapter XXV., as enacted with special reference to the provisions of Section 19, Article I., of the constitution. The last named section is as follows : "All offences less than felony, and in which the punishment does not exceed a fine of $100, or imprisonment for thirty days, shall be tried summarily before a justice of the peace or other officer authorized by law, without indictment or intervention of a grand jury, saving to the defendant the right of appeal ; and no person shall be held to answer for any higher crime or offence unless on presentment of a grand jury, except in cases arising in the land and naval service, or in the militia, when in active service in time of war or public danger." It was thus held, in substance, that the intention of the act that the offence of petit larceny shall be brought within the jurisdiction of a trial justice is the key of the construction of the act, and, as that intent could be effectuated in no other way than by adjusting the provisions of the act to correspond with the intention of Section 19, Article I., of the constitution, that such an adjustment was demanded by sound principles of construction. That adjustment consisted in looking to Section 19 as the means of fixing the maximum of punishment for petit larceny, and as that section limited the jurisdiction of the inferior courts proceeding summarily to punishment not exceeding a fine of $100 and imprisonment not exceeding thirty days, these limits were to be taken as the proper limits of punishment in all cases of petit larceny.

The principle of the method of reasoning employed in State *v.* Harper to reach the conclusion just indicated is that the limit

of the powers of the legislature must be regarded as an implied limit to their intention in order to give their purpose efficacy within the limit of their powers. In construing a statute enacted by a legislative body of limited powers, such construction should undoubtedly be aided by the presumption that in its passage the legislature was looking to the terms limiting its powers. Where the language is doubtful this consideration should have weight in determining a preference for that interpretation that is agreeable to the restrictions of the fundamental law. It is quite a different matter to read such a statute and the clauses of the constitution affecting the legislative powers *in pari materia*, as was done in State *v.* Harper. Where enactments, separately made, are read *in pari materia*, they are treated as having formed, in the mind of the enacting body, parts of a connected whole, though considered by such body at different moments of time and under distinct and separate aspects of the common subject. Such a principle is in harmony with the actual practice of legislative bodies, and is essential to give unity to the laws and a consistent embodiment in a connected system. It is difficult to see how this principle can become the means of connecting, for the purpose of construction, clauses and provisions of a constitution established by an authority distinct from and independent of such legislative body, and proceeding by different methods with the enactment of a strictly legislative body. As the two bodies cannot in their nature unite to carry out a common purpose, it is difficult to see how their independent enactments can be treated as if they had such capacity and intention.

If the design and intention of Section 19, Article I., was to fix the punishment due to the offence of petit larceny, or to any class of offences to which that crime appertains, that effect would be accomplished independently of the statute, and even though it expressed an inconsistent intention. But it is not possible to construe that section as having any such intention. It is possible that a law may be so framed as to practically embody in it the language of some clause or provision of the constitution, and thus to permit such language to take an effect beyond that intended by its use in the constitution.. In that case the clause

of the constitution so embodied would, for the purpose for which it was intended by the legislature, become a part of the act as effectually as if its language was recited as part of the act. It would no longer take effect merely as part of the fundamental law, but as the language of the statutory law. Independently of such a case the whole effect of a clause of the constitution must remain that which the framers of the constitution intended for it. The question then arises : " Has the legislature so embodied Section 19, Article I., of the constitution, in the act conferring jurisdiction on trial justices as to give it effect beyond that intended by the framers of the constitution, and such as it could only have by being enacted as part of the language of a statute ?" Unless this question can be solved in the affirmative, no ground exists for reading that section *in pari materia* with the statute, as was done in State *v.* Harper.

To answer the question just stated in the affirmative, it is necessary to find in the statute an intention that it should be construed as if Section 19, Article I., was embodied in it. It will not be contended that there is in the statute an expression of such an intent. Can it, then, be implied ? The argument in State *v.* Harper is, in effect, that there is an omission in the statute that ought to be supplied from some source, and, as no competent source appears but Section 19, that resort should be had to that to supply such deficiency. Assuming, for the present, that there is a clear omission in the statute, the obligation on the courts to supply it is not absolute. If it is a defective omission they cannot supply it without supplementing the legislative will, which is beyond their competency. If it is an omission intentionally, looking to a particular source from which the supply may come, all the courts can do is to follow that intention, and, by means of it, supply such omission.

But the conclusive view of this subject is that there is no omission in the statute. At the time of the passage of the act conferring jurisdiction in cases of petit larceny on trial justices, that offence was defined by the statute law as a misdemeanor, and certain penalties attached to it. The measure of punishment prescribed was in excess of that within the competency of trial justices under Section 19, Article I. If it had been the inten-

tion of the legislature so to reduce the measure of punishment in cases of petit larceny as to bring all such cases within the competency of trial justices, they would naturally have repealed the pre-existing law that stood in the way of such a result. They did not do so, but, on the contrary, both of these acts were re-enacted as part of the general statutes. It was, therefore, the clear intention of the legislature that they should stand together, and, such being the case, they must be read together, and so we find the offence fully defined, and its proper measure of punishment indicated by placing it in this class of misdemeanors. There is, therefore, no omission to be supplied.

It is said that there was a clear intent that trial justices should take jurisdiction, and that could not be unless the measure of punishment, as thus fixed by law, should be reduced. On the other hand, as we have seen, there was an equally clear intention that the antecedent statute penalties should not be reduced, evidenced, as we have seen in the first place, by failing to repeal the previous law; and, in the second place, by re-enacting it side by side with the act conferring jurisdiction on trial justices. How this incongruity is to be explained, is matter of speculative opinion merely; possibly it was thought that Section 19 was a mere limitation upon the power of punishment by trial justices and not a strict test of their jurisdiction, and thus, practically, two grades might exist in the offence of petit larceny—one dependent on the statute, and the other on the measure of punishment within the competency of trial justices. This matter we cannot determine, but it is clear that we cannot raise an implication in favor of embodying the provisions of Section 19 in the statute without violating a much clearer implication—that they intended to leave standing the measure of punishment prescribed by the antecedent statute. This is conclusive of the question whether any ground exists in the intention of the statute for reading Section 19 *in pari materia* with it as part of the expressed will of the legislature.

It is clear that the trial justices have, by Section 19, Article I., no exclusive jurisdiction of cases of petit larceny, and thus there is no ground for excluding the jurisdiction of the Court of General Sessions.

The sentence of the Court of General Sessions is free from objection, as it was conformable to the punishment imposed in cases of misdemeanors under the operation of the act of March, 1878.   16 *Stat.* 453.

The judgment of the Court of General Sessions must be affirmed and the appeal dismissed.

McIVER and McGOWAN, A. J.'s, concurred.