22480

GTE SPRINT COMMUNICATIONS CORPORATION, Appellant v. The PUBLIC SERVICE COMMISSION OF SOUTH CAROLINA, Telecommunications Systems, Inc., Southern Bell Telephone and Telegraph Company, AT&T Communications of the Southern States, Inc., United Telephone Company of the Carolinas, and the Consumer Advocate for the State of South Carolina, Respondents.

(341 S. E. (2d) 126)

Supreme Court

---

*Jay Bender,* of *Belser, Baker, Barwick, Ravenel, Toal & Bender,* Columbia, and *Phyllis A. Whitten,* of *GTE Sprint Communications Corp.,* Washington, D.C., *for appellant.*

*Arthur G. Fusco* and *Sarena K. Dickerson,* of the *South Carolina Public Service Com'n,* Columbia, *for respondent The Public Service Com'n of South Carolina.*

*Mitchell M. Willoughby,* of *Willoughby & Scott,* Columbia, *for respondent Telecommunications Systems, Inc.*

*Fred A. Walters,* of *Southern Bell Tel. & Tel. Co.,* and *John D. Gregory,* of *Lewis, Babcock, Gregory & Pleicones,* Columbia, *for respondent Southern Bell Tel. and Tel. Co.*

*Francis P. Mood* and *Belton T. Zeigler, Boyd, Knowlton, Tate & Finlay,* Columbia, *for respondent AT&T Communications of the Southern States, Inc.*

*William F. Austin* and *Russell H. Putnam,* Columbia, *for respondent United Telephone Co. of the Carolinas.*

*Steven W. Hamm, Nancy J. Vaughn* and *Natalie J. Moore,* all of the *South Carolina Dept. of Consumer Affairs,* Columbia, *for respondent The Consumer Advocate for the State of South Carolina.*

Heard Dec. 17, 1985.

Decided Feb. 25, 1986.

CHANDLER, Justice:

GTE Sprint Communications Corporation (GTE) appeals a Circuit Court Order which affirmed a Public Service Commission (PSC) Order. PSC denied GTE a certificate of public convenience and necessity to provide unlimited intercity telecommunications services in South Carolina. Specifically,

GTE was granted a certificate to provide inter-LATA service only.[1]

We affirm.

## BACKGROUND

In January, 1982, PSC permitted, for the first time, limited competition in the telecommunications field when it granted Telecommunications Systems, Inc. (TSI) authority to provide unlimited statewide long distance service.[2] One of PSC's concerns at that time was the impact of TSI's operations upon local rates. To meet this concern, TSI was ordered to pay access charges to the local phone companies to offset the estimated loss of revenue.

At the time of the TSI grant the Bell System, providing local and long distance telephone service, was fully intact.

Subsequently, the landmark federal antitrust divestiture suit against AT&T was settled by a court approved order. *See U. S. v. American Telephone and Telegraph Co.*, 552 F. Supp. 131 (D.D.C. 1982), *aff'd sub nom. Maryland v. U. S.*, 460 U. S. 1001, 103 S. Ct. 1240, 75 L. Ed. (2d) 472 (1983). The terms of the settlement compelled AT&T to divest itself of the Bell Operating Companies (BOC's) such as Southern Bell..

To implement its approval order, the District Court divided all Bell territory in the Continental U. S. into Local Access and Transport Areas, termed "LATA's." Each LATA was centered on a "city or other identifiable community of interest." *U. S. v. Western Elec. Co., Inc.*, 569 F. Supp. 990, 994 (D.D.C. 1983). South Carolina was divided into four LATA's: Charleston, Columbia, Florence and Greenville. *Id.* at 1029.

Since divestiture, the BOC's have been allowed to provide long distance service only between telephones located within a LATA. This is known as intra-LATA traffic. An intra-LATA call is one which both originates and terminates within the geographic boundary of a given LATA. An inter-LATA call is one which originates within the geographic

---

[1] LATA's will be defined and discussed, *infra.*
[2] PSC Order No. 82-3.

boundary of one LATA and terminates within the boundary of another LATA.

The effect of divestiture is set out in *Western Electric:*

What the [BOC's] will do in the services field after divestiture is (1) to engage in exchange telecommunications, that is, to transport traffic between telephones located within a LATA, and (2) to provide exchange access within a LATA, that is, to link a subscriber's telephone to the nearest transmission facility of AT&T or one of AT&T's long-haul competitors.

Once the divestiture is completed, the [BOC's] will be allowed to transport communications only to and from telephones and other apparatuses located within the same LATA (intra-LATA traffic); because of their local monopoly position, the decree does not permit the [BOC's] to carry calls between different LATA's (inter-LATA traffic). Only AT&T and its intercity competitors — such as MCI, Sprint, and Satellite Business Systems — may carry telecommunications traffic which originates in one LATA and terminates in another:

569 F. Supp. at 994.

Before divestiture long distance toll rates of BOC's provided a significant supplement, or subsidy, to local rates. To replace this subsidy, BOC's are permitted to charge long distance carriers for connecting to their local facilities. These connector, or "hook-up," charges are referred to in the divestiture order as "access" charges. These charges may be set in amounts approved by federal and state regulators. *Id.* at 999.

Accordingly, PSC issued Order No. 84-871 in December, 1983, to establish a new tariff system for rates and charges for the use of local facilities by long distance carriers. It ordered Southern Bell to file tariffs for access charges as part of this scheme.

GTE filed with the PSC an application for a certificate of public convenience and necessity to provide unlimited statewide long distance service on February 3, 1984. That is, GTE sought to provide both intra-LATA and inter-LATA service.

PSC, after consideration of the record made at a hearing, granted GTE inter-LATA authority, but denied GTE authority for intra-LATA service. It based the denial upon

"the adverse effect that [intra-LATA service] would have on the price of local exchange service." PSC Order No. 84-622 at page 27.

The Circuit Court affirmed, and this appeal follows.

## ISSUES

GTE originally appealed PSC's factual finding that assessment of access charges would not avoid an adverse impact on local rates. This exception has not been briefed and is deemed abandoned. *See* Supreme Court Rule 8, § 2. Accordingly, GTE's appeal of the PSC Order is limited to two grounds:

1. GTE was denied Due Process of Law.
2. GTE was denied Equal Protection of the Laws.

## SCOPE OF REVIEW

As part of the Administrative Procedures Act, S. C. Code Ann. § 1-23-380(g)(1) (Supp. 1984) provides:

> The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact ... The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions.

Additionally, S. C. Code Ann. § 58-9-1450 (1976) provides:

> All orders of the Commission shall be deemed prima facie just and reasonable and in all actions and proceedings ... the burden of proof shall be on the party attacking ... to show that the order is unlawful or unreasonable.

> This Court has held:
> The Public Service Commission is recognized as the 'expert' designated by the legislature to make policy determinations regarding utility rates; thus, the role of a court reviewing such decisions is very limited.

*Patton v. S. C. Public Service Comm'n*, 280 S. C. 288, 291, 312 S. E. (2d) 257, 259 (1984).

## I. DUE PROCESS

The PSC's authority to regulate entrance into the intrastate telephone utility field is set forth in S. C. Code Ann. § 58-9-280 (1976):

> No telephone utility shall begin the construction or operation of any telephone utility plant or system, or any extension thereof ... without first obtaining from the Commission a certificate that public convenience and necessity require or will require such construction or operation ...

GTE asserts that it was denied procedural due process. It contends it had no ascertainable standard by which it could prepare to disprove Southern Bell's claim that a grant of intra-LATA authority would affect adversely the price of local exchange service. It argues that "no statute, properly promulgated regulation or prior decision of the PSC provided GTE with advance notification that its application would hinge on its ability to prove a lack of adverse effect on local exchange service rates."

However, a fair reading of PSC Order No. 82-3, which granted TSI statewide operating authority, contains such notice. In Order No. 82-3, PSC expressed its concern that TSI's operations might result in an unreasonable increase in rates for local exchange carriers. As protection, PSC ordered TSI to pay the local exchange companies access charges.

Moreover, Southern Bell, in its pre-filed direct testimony in this case, stated:

> We believe that the Commission should not permit intra-LATA competition or grant authority to other carriers to provide service within South Carolina's LATA's without first making a full public interest examination and assessment of the impact that such a grant will have on universal service, *local telephone rates,* quality of service and the financial integrity of the local exchange companies involved.

\* \* \* \* \* \*

Increased competition will almost certainly result in an increase in the *residually priced local exchange rate.* [Emphasis supplied.]

Thus, GTE knew that its request for intra-LATA service was challenged; the potential negative impact on local exchange rates was a known issue prior to the hearing. GTE had an opportunity to argue before PSC that access charges are, in fact, an adequate means of compensation. *See GTE Sprint Communications v. AT&T Communications,* _____ Va. _____ , 337 S. E. (2d) 702, 707 (1985) (presenting similar fact pattern and a due process question). GTE failed to exercise its right to present rebuttal evidence or dispute the relevancy of the issue. *Palmetto Alliance v. S. C. Public Service Comm'n,* 282 S. C. 430, 438, 319 S. E. (2d) 695, 700 (1984).

GTE had actual notice that the impact on local rates, aside from access charges, would be brought as part of establishing "public convenience and necessity." Even if the TSI Order, Order No. 82-3, did not inform GTE specifically that availability of access charges was not dispositive of the issue, the actual notice provided cured any error. Where a party shows no prejudice, the error, if any, is harmless. *Palmetto Alliance.*

## II. EQUAL PROTECTION

GTE next attacks PSC's decision as a denial of equal protection under S. C. Const. art I, § 3 and the Fourteenth Amendment to the U. S. Constitution. It argues that it is similarly situated to TSI, which was granted statewide authority in 1982.

"The constitutional guarantee of equal protection of the laws requires that all persons be treated alike under like circumstances and conditions, both in privileges conferred and liabilities imposed." *Marley v. Kirby,* 271 S. C. 122, 123-124, 245 S. E. (2d) 604, 605 (1978).

The requirements of equal protection are satisfied if (1) the classification bears a reasonable relation to the purpose sought to be effected; (2) the members of the class are treated alike under similar circumstances and conditions; and (3) the classification rests on some reasonable basis. *State ex rel. Medlock v. S. C. State Family Farm Dev. Auth.,* 279 S. C. 316, 306 S. E. (2d) 605 (1983).

When TSI filed its application and was granted statewide authority, break-up of the Bell system had not occurred and the state had not been divided into LATA's.

PSC recognized that divestiture had triggered different policy considerations as the climate of the telecommunications industry had been altered materially. Both PSC and the Circuit Court held that GTE in 1984 was *not similarly situated to TSI* in 1982.

When TSI was ordered to negotiate access charges with Southern Bell, PSC had no tariff rate system in force. As noted earlier in this opinion, PSC established a tariff rate system in 1983 which foreclosed subsequent individual negotiations. *See* PSC Order No. 83-871. These tariffs have the full force and effect of law. *See Clarke V. General Telephone Co. of the Southeast*, 268 S. C. 92, 232 S. E. (2d) 26 (1977); S. C. Code Ann. §§ 58-9-230, -390 (1976).

In view of this subsequent tariff order, GTE's contention that it was denied equal protection is without merit. PSC's action was based on the need to preserve affordable local telephone service and to protect the public interest. There was a clear change of conditions between the times of filing of TSI and GTE which provides a *reasonable* basis for different treatment.

### III. CONCLUSION

GTE downplays the importance of divestiture and its impact on local exchange rates. It argues that "access charges" would continue to provide a toll subsidy to local telephone companies. However, evidence of record supports PSC's factual finding that such charges would not avoid an adverse impact on local rates.

PSC is the recognized expert designated by law to make factual determinations. When these determinations are supported by substantial evidence, as here, this Court has no authority to substitute its judgment.

As noted above, GTE has abandoned its appeal of this finding. It cannot circumvent the binding effect of the PSC finding by basing its appeal upon alleged due process and equal protection violations. We find no such constitutional error.

Affirmed.

Ness, C. J., Gregory and Finney, JJ., and Bruce Littlejohn, Acting J., concur.

Harwell, J., not participating.