551 S.E.2d 235

**In the Matter of the Care and Treatment of
Donald Lee McCRACKEN, Appellant.**

**No. 25323.**

Supreme Court of South Carolina.

Heard March 7, 2001.
Decided July 23, 2001.
Rehearing Denied Sept. 12, 2001.

88

Kenneth W. Gaines, of Columbia, for appellant.

Attorney General Charles M. Condon, Deputy Attorney General Treva Ashworth, Senior Assistant Attorney General Kenneth P. Woodington, and Assistant Attorney General Steven G. Heckler, all of Columbia, for respondent.

PLEICONES, Justice:

Appellant was found to be a sexually violent predator (SVP) by a jury and committed to the Department of Mental Health (DMH) for control, care, and treatment pursuant to S.C.Code Ann. § 44–48–100 (Supp.2000). He has appealed, raising both trial errors and constitutional issues. We affirm.

### A. *Mootness*

■ The first issue we address is the State's contention that appellant's release from DMH's custody during the pendency of this appeal renders it moot. Under the SVP Act,[1] (Act) a person who is committed pursuant to the Act is entitled to an annual review of his status, § 44–48–110, or may be released at any time upon the petition of the Director of DMH. § 44–48–120. There exists the very real possibility, then, that many SVP appellants will be released before their appeals can be concluded. Since most of the issues raised by appellant are 'capable of repetition but evading review,' we decline to dismiss the appeal on mootness grounds. *Byrd v. Irmo High School,* 321 S.C. 426, 468 S.E.2d 861 (1996).

---

1. S.C.Code Ann. §§ 44–48–10 to –170 (Supp.2000).

### B.  *Civil or Criminal Statute*

■  Appellant contends the Act is violative of his double jeopardy and ex post facto rights because, although nominally civil in nature, it is in fact punitive.  At trial,[2] he did not attempt to distinguish our SVP Act from the Kansas Act upon which it was modeled, and which the United States Supreme Court has held is a civil, non-punitive scheme.  *Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).  Although appellant now argues on appeal that various features of our Act distinguish it from the Kansas Act, these claims were not raised below and, accordingly, are not properly before us now.  *E.g., Taylor v. Medenica,* 324 S.C. 200, 479 S.E.2d 35 (1996).  The only issue properly before us is whether the Act, on its face, constitutes additional criminal punishment.

We hold today in *In the Matter of Matthews,* 345 S.C. 638, 550 S.E.2d 311 (2001) that a side by side comparison of our SVP Act and the Kansas Act does not reveal any substantial differences.  On this record, appellant has failed to meet his burden of showing "clearest proof" that the Act on its face is punitive rather than civil in nature.  *Id.*

### C.  *Constitutional Claims*

■  Appellant contends that the conditions of his confinement demonstrate that he is being improperly punished as a criminal.  We find his remedy for any such unconstitutional confinement would be by writ of habeas corpus,[3] and that in any case his release from DMH during this appeal renders moot this claim.  We note that the Act provides that a person committed pursuant to it shall be kept in a secure facility, § 44–48–100(A), and that his commitment "shall conform to constitutional requirements for care and treatment." § 44–48–170.  If these requirements are not honored by the custodian, then relief lies with an action brought against that individual, and not with a facial challenge to the statute which does not prescribe the terms of confinement.

---

2.  Appellant's appellate attorney was not his trial attorney.

3.  *Seling v. Young,* 531 U.S. 250, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001) was a habeas action brought by the SVP against the individual superintendent of Washington State's Special Commitment Center.

■ We decline to reach the merits of appellant's substantive due process claims made pursuant to the state[4] and federal[5] constitutions, finding they are not preserved for our review. The record contains a single reference to a substantive due process claim, apparently made during the probable cause hearing. The reference, in its entirety, is:

> We believe that [the Act] violates the U.S. and South Carolina Constitution [sic] in that it denies [appellant] as applied to this case his due process rights under the 14[th] Amendment and, of course, article one, section three of the South Carolina Constitution.

There is no ruling on this conclusory allegation, and therefore it is not properly before the Court. *Taylor v. Medenica, supra; cf., Wilder Corp. v. Wilke,* 330 S.C. 71, 497 S.E.2d 731 (1998) (objection must state grounds).

■ Further, it is this Court's firm policy to decline to rule on constitutional issues unless such a ruling is required. *Fairway Ford, Inc. v. County of Greenville,* 324 S.C. 84, 476 S.E.2d 490 (1996). A constitutional claim must be raised and ruled upon to be preserved for appellate review. *Hoffman v. Powell,* 298 S.C. 338, 380 S.E.2d 821 (1989). A bald assertion, without supporting argument, does not preserve an issue for appeal. *Wilder Corp. v. Wilke, supra.* We decline to reach appellant's federal and state due process claims.

### D.   *Trial Errors*

Appellant raises three trial errors, two of which are not preserved for appeal.

■ First, he claims the trial court erroneously denied his directed verdict and motion for a judgment notwithstanding the verdict (jnov) because the evidence was insufficient to establish that he was a SVP. At trial, appellant made only a general directed verdict motion, stating, "I think [the State has] failed to meet their burden of proof beyond a reasonable doubt." This motion, which stated no specific ground, preserved nothing for appellate review. *E.g., Connolly v. Peo-*

---

4.   S.C. Const. art. I, § 3.

5.   U.S. Const. amend. V and XIV.

*ple's Life Ins. Co.,* 299 S.C. 348, 384 S.E.2d 738 (1989). Further, since only grounds raised in the directed verdict motion may properly be reasserted in the jnov motion, and since no grounds were raised in the directed verdict motion, no jnov claim is preserved for our review. *E.g., Duncan v. Hampton County School District # 2,* 335 S.C. 535, 517 S.E.2d 449 (Ct.App.1999), *cert. denied,* Sept. 24, 1999.

▮▮▮ Next, appellant argues that the State's closing argument was improper. Appellant interposed no contemporaneous objection to the argument and thus no issue regarding it is preserved for appellate review. The failure to make a contemporaneous objection can be excused only when the challenged argument constitutes abuse of a party or witness. *Dial v. Niggel Associates, Inc.,* 333 S.C. 253, 509 S.E.2d 269 (1999). The argument about which appellant now complains does not fall within the *Dial* exception, and therefore we decline to address the merits of this issue.

Appellant's third claim of trial error relates to the trial court's jury instructions. As explained below, we find no error.

Appellant first contends the trial judge committed reversible error in refusing his request to charge the "full expression" of legislative intent found in § 44–48–20. He also contends the trial judge erred when he recharged the jury in response to its question. Finally, he argues that the jury charge violated equal protection.

## I. *§ 44–48–20*

▮▮▮ The trial judge, paraphrasing the statute entitled "Legislative Findings," § 44–48–20, charged the jury:

Now, I told you earlier that the State has brought this case under the Sexually Violent Predator Act of our Code of Laws. Our General Assembly has determined that those persons who are found to be sexually violent predators under the law will require involuntary civil commitment in a secure facility for long-term control, care and treatment.

In this case that usually means the Department of Mental Health or the Department of Corrections, depending on the circumstances. Additionally the General Assembly has de-

termined that the existing civil commitment process is inadequate to address the special needs of sexually violent predators and has therefore determined that a separate involuntary civil commitment process is necessary for long-term control, care and treatment of sexually violent predators.

Ladies and gentlemen, the intent of the legislature in passing this law does not in any way control your decision in this case. You and you alone must decide whether or not [appellant] is, in fact, a sexually violent predator under the law.

Appellant contends the trial judge committed reversible error in omitting from this paraphrase of § 44–48–20 its first sentence, "The General Assembly finds that a mentally abnormal and extremely dangerous group of sexually violent predators exists which require involuntary civil commitment in a secure facility for long-term control, care and treatment." Appellant argues the language should have been charged, because it would have permitted him to argue that the legislation was targeted to a discreet group of extremely dangerous sexual predators, and that he did not fit this category. We find no error.

■ There was no error in the general charge, which gave the jury the background of the issue they were being asked to decide, followed by a charge defining the terms which the State must prove beyond a reasonable doubt. Despite the expression of intent in § 44–48–20, the actual burden on the State to show that an individual is a SVP does not require a showing of "extreme danger." See §§ 44–48–100; 44–48–30(1)(b); (3); (9). "A jury charge is correct if, when the charge is read as a whole, it contains the correct definition and adequately covers the law." *Keaton ex rel. Foster v. Greenville Hosp. Sys.*, 334 S.C. 488, 514 S.E.2d 570 (1999) (internal citations omitted). The charge given was proper.

## II. *Recharge*

■ In his initial charge, the trial judge told the jury that the "first element" that the State must show is that appellant had a prior conviction for a sexually violent offense. He then charged the jury:

The second element the State must prove is that the Respondent suffers from a mental abnormality or from a personality disorder that makes him likely to engage in acts of sexual violence if he is not confined in a secure facility for long-term control, care and treatment.

Now, in order for you to understand these elements a little bit better, I am also going to define a couple of the terms which I just used. We used the term mental abnormality. What do we mean by the term mental abnormality?

That means a mental condition affecting a person's emotional or volitional capability that predisposes the person to commit sexually violent offenses.

The term also we [sic] used was likely to engage in acts of sexual violence. What do we mean by that? That means this. It means a person's propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others.

There was no objection to this portion of the charge.

The jury later requested to be recharged on the "second element" of the law. The judge indicated he would remind them of the first element (conviction of a sexually violent offense) and then recharge the second element. He did so. Following that charge, appellant objected to the "undue stress" placed on the definitions of "mental abnormality" and "likely to engage in acts of sexual violence." He argued that the judge should emphasize equally the portion of the statute "if not confined to a secure facility for long-term control, care and treatment." The judge declined to alter the charge.

The recharge did not emphasize two "elements" to the exclusion of the third. The jury was told it must find appellant "suffers from either a mental abnormality or personality disorder that makes him likely to engage in acts of sexual violence if he is not confined in a secure facility for long-term control, care and treatment." This is the definition of sexually violent predator. § 44–48–30(1)(b). The statute further defines "mental abnormality," § 44–48–30(3), and the jury was recharged on that definition. The statute also specifically defines the term "likely to engage in acts of sexual violence," § 44–48–30(9), and this statutory definition was charged. The

judge then repeated the general definition of sexually violent predator, including the "long-term" phrase.

It is clear that the judge simply charged the statute, and where a specific term had a specific definition, charged that definition. He did not improperly emphasize any one part of the statute at the expense of another.

### III. *Equal Protection*

In brief, appellant contends he was entitled to a new trial, a directed verdict, and/or a jnov because the jury instruction violated equal protection. This issue was neither raised nor ruled upon below, and therefore is not properly before the Court. *Hoffman v. Powell, supra.*

### E. *Funding*

At the outset of his trial, appellant's attorney complained appellant's due process and equal protection rights were being violated because there was no funding available for depositions. He did not specify whose deposition he would take were funds available.

On appeal, appellant argues that the lack of funds to depose the State's expert denied him his sixth amendment right to the effective assistance of counsel. We have determined that appellant has failed to show that this is a criminal proceeding, and therefore the sixth amendment is not implicated. The only right to counsel here is appellant's statutory right to the assistance of appointed counsel, a right which was honored. § 44–48–90 (Supp.2000).

Appellant has not shown any prejudice, much less a constitutional violation, in the denial of funds to depose unidentified individuals.

### *Conclusion*

For the reasons given above, this appeal is **AFFIRMED.**

TOAL, C.J., MOORE, WALLER and BURNETT, JJ., concur.