723 S.E.2d 198

Kristi Glenn McLEOD f/k/a/ Kristi G. Starnes, Appellant,

v.

Robert Anthony STARNES, Respondent.

No. 27100.

Supreme Court of South Carolina.

Heard Feb. 15, 2011.
Decided March 7, 2012.

648

Jean Perrin Derrick, of Lexington, for Appellant.

J. Mark Taylor, of Moore, Taylor & Thomas, of West Columbia and Katherine Carruth Goode, of Winnsboro, for Respondent.

Justice HEARN.

Less than two years ago, this Court decided *Webb v. Sowell*, 387 S.C. 328, 692 S.E.2d 543 (2010), which held that ordering a non-custodial parent to pay college expenses violates equal protection, thus overruling thirty years of precedent flowing from *Risinger v. Risinger*, 273 S.C. 36, 253 S.E.2d 652 (1979). We granted permission in this case to argue against precedent pursuant to Rule 217, SCACR, so that we could revisit our holding in *Webb*. Today, we hold that *Webb* was wrongly decided and remand this matter for reconsideration in light of the law as it existed prior to *Webb*.

## FACTUAL/PROCEDURAL BACKGROUND

Kristi McLeod (Mother) and Robert Starnes (Father) divorced in 1993 following five years of marriage. Mother received custody of their two minor children, and Father was required to pay child support in the amount of $212 per week, which was later reduced to $175 per week by agreement, in addition to thirty-five percent of his annual bonus. At the time, Father earned approximately $29,000 per year plus a $2,500 bonus. However, his salary steadily increased to over $120,000 per year and his bonus to nearly $30,000 by 2007. In 2008, his salary was almost $250,000. During the same time period, Mother's income increased and fluctuated from less than $12,000 per year to a peak of approximately $40,000 per year. Despite the rather sizable increases in Father's income, Mother never sought modification of his child support obligation because, as Father admitted, she had no way of knowing about them.

In August 2006, the parties' older child, Collin, reached the age of majority and enrolled as a student at Newberry College.[1] To help take advantage of this opportunity, he sought all scholarships, loans, and grants that he could. Father wholly supported Collin's decision to attend Newberry. Indeed, Father wrote an e-mail in March 2006 agreeing to repay all of Collin's student loans upon graduation. He even co-signed a promissory note for Collin's student loans. Furthermore, in an August 2006 letter, Father agreed to pick up "odd expenses from [Collin]'s education" and told Collin to call him whenever he "needs a little help." Interestingly, Father took it upon himself in that same letter to unilaterally decrease his weekly child support from $175 to $100. Mother later acquiesced in this reduction, apparently in consideration of Father's assurances that he would support Collin while he was in college. However, Father did not uphold his end of the bargain, nor did he regularly pay the percentage of his bonus as required.

Mother brought the instant action in March 2007 seeking an award of college expenses, an increase in child support for

---

1. Their younger son, Jamie, has autism; although he attained the age of majority in 2008, he is not expected to graduate from high school until he is twenty-one.

Jamie, and attorney's fees and costs. Father counterclaimed, asking that the court terminate: (1) his child support for Collin because he had attained the age of majority and graduated from high school; (2) his support for Jamie upon graduation from high school; (3) and the requirement that he pay a percentage of his annual bonus as child support. He also denied that he should be required to pay any college expenses for Collin. A temporary order was filed in June 2007 that set child support for Jamie at $235 per week, ordered Father to contribute $400 per month towards Collin's college expenses, and left intact the thirty-five percent of Father's annual bonus payable as support.

The final hearing was not conducted until March and July 2009. The court dismissed Mother's claim for college expenses on the ground that it violated the Equal Protection Clause of the United States Constitution.[2] Furthermore, the court found that Jamie's mental and physical disabilities required a continuation of child support beyond the age of majority and as long as the child's disabilities exist. However, the court reduced Father's obligation for Jamie after recalculating the base obligation using different figures than those used in the temporary order. Furthermore, the court reduced the percentage payable from his annual bonus from thirty-five to ten.[3] The court accordingly found Father had overpaid child support for the two years the temporary order was in effect and reduced his monthly payments by fifteen percent until the overpayment was discharged. Finally, the court required both parties to pay their own attorney's fees and costs.

### ISSUES PRESENTED

Mother raises three issues on appeal:

I. Did the family court err in not awarding college expenses?

---

2. *Webb* had not yet been decided at this time.

3. The temporary order required Father to pay $1,018.33 per month, based upon Mother's monthly income of $1,600 and Father's monthly income of $8,741. The final order, however, required Father to pay $923 per month, finding Mother earned $3,300 per month and Father earned $10,666 per month.

II. Did the family court err in lowering the current support for the younger child and awarding Father a credit for alleged overpayment of child support during the pendency of this case?

III. Did the family court err in not awarding Mother attorney's fees and costs?

## LAW/ANALYSIS

### I. COLLEGE EXPENSES

Mother argues the family court erred in finding that an order requiring Father to pay college expenses for Collin violates equal protection. We agree.

 In *Webb*, we held that requiring a parent to contribute toward an adult child's college expenses violated the Equal Protection Clause.[4] 387 S.C. at 332–33, 692 S.E.2d at 545. We are not unmindful of the imprimatur of correctness which stare decisis lends to that decision. However, stare decisis is not an inexorable command: "There is no virtue in sinning against light or persisting in palpable error, for nothing is settled until it is settled right.... There should be no blind adherence to a precedent which, if it is wrong, should be corrected at the first practical moment." *Smith v. Daniel Const. Co.*, 253 S.C. 248, 255–56, 169 S.E.2d 767, 771 (1969) (Bussey, J., dissenting) (quoting *Sidney Spitzer & Co. v. Comm'rs of Franklin County*, 188 N.C. 30, 123 S.E. 636, 638 (1924)). Furthermore,

[w]hen the court is asked to follow the line marked out by a single precedent case it is not at liberty to place its decision on the rule of stare decisis alone, without regard to the grounds on which the antecedent case was adjudicated....
An original case could not possibly gain authority by a mere perfunctory following on the principle of stare decisis.

*State v. Williams*, 13 S.C. 546, 554–55 (1880). In that vein, stare decisis is far more a respect for a body of decisions as opposed to a single case standing alone. *See Langley v.*

---

**4.** In particular, *Webb* held *Risinger's* interpretation of Section 14–21–810(b)(4) of the South Carolina Code (1976)—now codified at Section 63–3–530(A)(17) (Supp.2010)—violated equal protection. 387 S.C. at 333, 692 S.E.2d at 545.

*Boyter,* 284 S.C. 162, 180, 325 S.E.2d 550, 560 (Ct.App.1984), *quashed on other grounds,* 286 S.C. 85, 332 S.E.2d 100 (1985) ("The doctrine of stare decisis says that where a principle of law has become settled by a *series of court decisions,* it should be followed in similar cases." (emphasis added)). This is not to say that a single case garners no protection from stare decisis, for even in those circumstances we should hesitate to revisit and reverse our decisions without good cause to do so. Our precedents simply make clear, however, that such a case is not rendered immutable by stare decisis.

▬ Therefore, "[s]tare decisis should be used to foster stability and certainty in the law, but[ ] not to perpetuate error." *Fitzer v. Greater Greenville S.C. Young Men's Christian Ass'n,* 277 S.C. 1, 4, 282 S.E.2d 230, 231 (1981), *superseded by statute on other grounds,* S.C.Code Ann. § 33–55–200 *et seq.* (2006). Stare decisis applies with full force with respect to questions of statutory interpretation because the legislature is free to correct us if we misinterpret its words. *Layton v. Flowers,* 243 S.C. 421, 424, 134 S.E.2d 247, 248 (1964). However, the doctrine is at its weakest with respect to constitutional questions because only the courts or a constitutional amendment can remedy any mistakes made. *Agostini v. Felton,* 521 U.S. 203, 236, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997).

We are at the first practical moment to reexamine *Webb,* a "single precedent case" concerning a constitutional question because it is the first and only case in this State finding an equal protection violation in these circumstances. We now believe *Webb* reversed the burden imposed on parties operating under rational basis review for equal protection challenges and should therefore be overruled.

▬ In *Webb,* we were asked to determine whether requiring a non-custodial parent to pay college expenses was a violation of equal protection. 387 S.C. at 330, 692 S.E.2d at 544. "The *sine qua non* of an equal protection claim is a showing that similarly situated persons received disparate treatment." *Grant v. S.C. Coastal Council,* 319 S.C. 348, 354, 461 S.E.2d 388, 391 (1995). Absent an allegation that the classification resulting in different treatment is suspect, a classification will survive an equal protection challenge so long

as it rests on some rational basis. *Lee v. S.C. Dep't of Natural Res.*, 339 S.C. 463, 467, 530 S.E.2d 112, 114 (2000). Under the rational basis test, a classification is presumed reasonable and will remain valid unless and until the party challenging it proves beyond a reasonable doubt that there "is no admissible hypothesis upon which it can be justified." *Carolina Amusement Co. v. Martin*, 236 S.C. 558, 576, 115 S.E.2d 273, 282 (1960). If we can discern any rational basis to support the classification, regardless of whether that basis was the original motivation for it, the classification will withstand constitutional scrutiny. *Lee*, 339 S.C. at 470 n. 4, 530 S.E.2d at 115 n. 4. The classification also does not need to completely achieve its purpose to withstand constitutional scrutiny. *Id.* at 467, 530 S.E.2d at 114.

In *Webb*, the majority viewed the classification created by *Risinger* for equal protection purposes as those parents subject to a child support order at the time the child is emancipated.[5] 387 S.C. at 332, 692 S.E.2d at 545. Without any elaboration, the majority concluded that there is no rational basis for treating parents subject to such an order different than those not subject to one with respect to the payment of college expenses. *Id.* Upon further reflection, we now believe that we abandoned our long-held rational basis rule that the party challenging a classification must prove there is no conceivable basis upon which it can rest and inverted the burden of proof. By not investigating whether there is any basis to support the alleged classification or refuting the bases argued, we effectively presumed *Risinger*'s reading of what is now section 63–3–530(A)(17) unconstitution-

---

5. In their respective dissents in *Webb*, the Chief Justice and Justice Kittredge stated the majority should have reviewed that case under the classification raised by the parties themselves, which was divorced and non-divorced parents. *Webb*, 387 S.C. at 333–34, 692 S.E.2d at 546 (Toal, C.J., dissenting); *id.* at 336, 692 S.E.2d at 547 (Kittredge, J., dissenting). Although the majority in *Webb* undertook to remedy what it perceived to be a constitutional error on grounds other than those argued by the parties, *id.* at 332 n. 5, 692 S.E.2d at 545 n. 5, the mere fact that a constitutional question is involved does not permit the Court to address issues not properly before it, *cf. In re McCracken*, 346 S.C. 87, 92, 551 S.E.2d 235, 238 (2001) ("A constitutional claim must be raised and ruled upon to be preserved for appellate review."). The dissent today would do the same thing as the *Webb* majority and review *Risinger* under a classification not properly before us.

al. Our treatment of this issue thus essentially reviewed *Risinger* under the lens of strict scrutiny as opposed to rational basis. *See Stephenson v. Bartlett,* 355 N.C. 354, 562 S.E.2d 377, 393 (2002) ("Under strict scrutiny, a challenged governmental action is unconstitutional if *the State* cannot establish that it is narrowly tailored to advance a compelling government interest" (emphasis added)); *see also Qutb v. Strauss,* 11 F.3d 488, 492 (5th Cir.1993) ("Under the strict scrutiny standard, we accord the classification no presumption of constitutionality."). Our decision in *Webb* therefore rests on unsound constitutional principles, and stare decisis does not preclude our reconsideration of the issue addressed in that case.[6]

▆ As with any equal protection challenge, we begin by addressing the class *Risinger* created under section 63-3-530(A)(17). Mother argues that the appropriate classification is divorced parents versus non-divorced parents. In his brief, Father adheres to the class *Webb* analyzed of parents subject to a child support order at the time of emancipation versus those who are not subject to one. However, Father argued Mother's proposed classification before the family court. He therefore cannot argue *Webb*'s class on appeal. *See State v. Dunbar,* 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003) ("A party may not argue one ground at trial and an alternate ground on appeal."). We accordingly review *Risinger* through the same lens used by the family court: whether it improperly treats divorced parents differently than non-divorced parents.

This State has a strong interest in the outcome of disputes where the welfare of our young citizens is at stake. As can hardly be contested, the State also has a strong interest in ensuring that our youth are educated such that they can become more productive members of our society. It is entirely possible "that most parents who remain married to each other support their children through college years. On the other hand, even well-intentioned parents, when deprived of the custody of their children, sometimes react by refusing to

---

6. We are not unmindful of Mother's alternate argument that Father separately agreed to pay for Collin's college expenses. Although we are cognizant of our hesitancy to reach constitutional questions when it is not necessary, there is no cogent reason to let the error in *Webb* persist.

support them as they would if the family unit had been preserved." *In re Marriage of Vrban,* 293 N.W.2d 198, 202 (Iowa 1980). Therefore, it may very well be that *Risinger* sought to alleviate this harm by "minimiz[ing] any economic and educational disadvantages to children of divorced parents." *Kujawinski v. Kujawinski,* 71 Ill.2d 563, 17 Ill.Dec. 801, 376 N.E.2d 1382, 1390 (1978); *see also LeClair v. LeClair,* 137 N.H. 213, 624 A.2d 1350, 1357 (1993), *superseded by statute on other grounds* ("The legitimate State interest served by these statutes is to ensure that children of divorced families are not deprived of educational opportunities solely because their families are no longer intact."). There is no absolute right to a college education, and section 63–3–530(A)(17), as interpreted by *Risinger* and its progeny, does not impose a moral obligation on all divorced parents with children. Instead, the factors identified by *Risinger* and expounded upon in later cases seek to identify those children whose parents would *otherwise* have paid for their college education, but for the divorce, and provide them with that benefit.

■■■ We accordingly hold that requiring a parent to pay, as an incident of child support, for post-secondary education under the appropriate and limited circumstances outlined by *Risinger* is rationally related to the State's interest. While it is certainly true that not all married couples send their children to college, that does not detract from the State's interest in having college-educated citizens and attempting to alleviate the potential disadvantages placed upon children of divorced parents. Although the decision to send a child to college may be a personal one, it is not one we wish to foreclose to a child simply because his parents are divorced. It is of no moment that not every married parent sends his children to college or that not every divorced parent refuses to do so. The tenants of rational basis review under equal protection do not require such exacting precision in the decision to create a classification and its effect.

Indeed, Father's refusal to contribute towards Collin's college expenses under the facts of this case proves the very ill which *Risinger* attempted to alleviate, for Father articulated no defensible reason for his refusal other than the shield erected by *Webb.* What other reason could there be for a

father with more than adequate means and a son who truly desires to attend college to skirt the obligation the father almost certainly would have assumed had he not divorced the child's mother? Had Father and Mother remained married, we believe Father undoubtedly would have contributed towards Collin's education. Collin has therefore fallen victim to the precise harm that prompted the courts in *LeClair*, *Kujawinski*, and *Vrban*—as well as *Risinger*—to hold that a noncustodial parent could be ordered to contribute towards a child's college education. Thus, this case amply demonstrates what we failed to recognize in *Webb:* sometimes the acrimony of marital litigation impacts a parent's normal sense of obligation towards his or her children. While this is a harsh and unfortunate reality, it is a reality nonetheless that *Risinger* sought to address.

The dissent distinguishes *LeClair*, *Kujawinski*, and *Vrban* on the ground they interpret statutes which explicitly provide for an award of college expenses, contending section 63–3–530(A)(17) does not. As this case comes to us, however, *Risinger*'s reading of section 63–3–530(A)(17) has not been challenged on statutory construction grounds. Accordingly, for our purposes, section 63–3–530(A)(17) does permit the family court to award college expenses. The question before us today is only whether doing so violates equal protection.

The dissent accordingly must couch its attempt to undermine *Risinger* as one of subject matter jurisdiction which we can reach *sua sponte*. The subject matter jurisdiction of the family court is limited to what is "expressly or by necessary implication conferred by statute." *State v. Graham*, 340 S.C. 352, 355, 532 S.E.2d 262, 263 (2000). Over thirty years ago, *Risinger* held the predecessor to section 63–3–530(A)(17) permits a family court to award college expenses if certain criteria are met.[7] Since *Risinger*, the statutes confer-

---

7. *Risinger* held the family court's authority to award support for a child after the age of majority " 'where there are physical or mental disabilities of the child *or other exceptional circumstances that warrant it* ' " included awarding college expenses. 273 S.C. at 38, 253 S.E.2d at 653 (quoting S.C.Code Ann. § 14–21–810(b)(4) (1979) (emphasis added)). We wrote that "[t]he need for education is the most likely additional 'exceptional circumstance' which might justify continued financial support." *Id.*

ring jurisdiction on the family court have been amended repeatedly, yet the General Assembly never limited *Risinger*'s application. "The Legislature is presumed to be aware of this Court's interpretation of its statutes." *Wigfall v. Tideland Utils., Inc.*, 354 S.C. 100, 111, 580 S.E.2d 100, 105 (2003). When the General Assembly failed to amend this section over the course of three decades, "its inaction is evidence [it] agrees with this Court's interpretation." *See id.* At this juncture, we are therefore unwilling to agree with the dissent's *sua sponte* conclusion that the General Assembly never intended to give the family court jurisdiction to order the payment of college tuition as an incident of child support. Due to the General Assembly's tacit approval of *Risinger* for over thirty years and the fact its construction has never been challenged, not even in this case, reaffirming this principle does not amount to "legislat[ing] from the bench" or a "cavalier[ ] disregard of the Legislature's express limitations on the family court's jurisdiction" as the dissent suggests. If the dissent's assessment of legislative intent were correct, we are confident the General Assembly would have amended the jurisdictional statutes accordingly since 1979.

 We now hold *Risinger* does not violate the Equal Protection Clause because there is a rational basis to support any disparate treatment *Risinger* and its progeny created. In fact, the case before us particularly demonstrates the need for a rule permitting an award of college expenses in certain circumstances in order to ensure children of divorce have the benefit of the college education they would have received had their parents remained together. Accordingly, we reverse the order of the family court and remand this matter for a determination of whether and in what amount Father is required to contribute to Collin's college education under the law as it existed prior to *Webb*.[8]

---

8. The family court also dismissed Mother's claim because Collin chose to attend a private college. While we agree that the cost of a child's education is a relevant consideration in light of the factors identified in *Risinger* and subsequent cases, attendance at a private school does not foreclose an award of expenses. Instead, the tuition amount is to be factored in with the child's attainment of scholarships, grants, and loans as well as the parents' ability to pay when determining whether to make such an award and in what amount.

## II. OVERPAYMENT OF SUPPORT

Mother argues the family court erred in awarding Father a credit for an alleged overpayment in child support from the date this action was filed. We agree.

The family court has the discretion to award retroactive child support from the filing date of the action upon a proper showing of a change in the child's needs or the supporting parent's ability to pay. *Ables v. Gladden*, 378 S.C. 558, 567–68, 664 S.E.2d 442, 447 (2008) (quoting *Thornton v. Thornton*, 328 S.C. 96, 115, 492 S.E.2d 86, 96 (1997); *Henderson v. Henderson*, 298 S.C. 190, 196, 379 S.E.2d 125, 129 (1989)). An increase or decrease may be ordered upon a showing of a change of condition at the time the modification is ordered. *Herring v. Herring*, 286 S.C. 447, 453, 335 S.E.2d 366, 369 (1985).

The temporary order set Father's monthly child support obligation at $1,018.33, based upon Mother's monthly pay of $1,600 and Father's monthly pay of $8,741. The order also left intact Father's obligation to pay Mother thirty-five percent of his annual bonuses. However, the final order decreased Father's obligation to $923, based upon Mother's monthly income of $3,300 and Father's monthly income of $10,666, and inexplicably reduced the percentage of Father's annual bonus payable as support from thirty-five percent to ten percent. The court also terminated Father's obligation to pay $400 per month towards Collin's college education. Based upon these new figures, the court found Father had overpaid support during the pendency of the case. Retroactively applying both figures to the monies already paid from the filing of this action, the court found that Father had overpaid $2,669.24 in monthly support and $9,998.05 in annual support, and that Father could reduce his future monthly payments by fifteen percent until the overpayment was discharged. This was error.

We find the final monthly support order was based upon erroneous calculations of the parties' income. Further, the bonus payment reduction from thirty-five percent to ten percent was ordered without any stated explanation. We find the calculations contained in the temporary order correct and reinstate those monthly and annual support terms. Accord-

ingly, Father has made no overpayment of support during the pendency of this action.

## III. ATTORNEY'S FEES AND COSTS

Mother argues the family court erred in not awarding her attorney's fees and costs. We agree.

"In determining whether to award attorney's fees, the court should consider each party's ability to pay his or her own fee; the beneficial results obtained by the attorney; the parties' respective financial conditions; and the effect of the fee on each party's standard of living." *Patel v. Patel,* 359 S.C. 515, 533, 599 S.E.2d 114, 123 (2004). Mother's attorney's fees and costs in this case are at least half of her income, while Father's are far less than one-third of his income. Further, this litigation was necessary primarily because of Father's conduct. Not only had Father neglected to pay the full amount of the thirty-five percent of his annual bonus due to his children, it was his contention that Jamie was not in need of support beyond the age of majority that prompted Mother to file this action, from which she has received significant beneficial results. Therefore, we reverse and remand for an award of attorney's fees and costs to Mother.

## CONCLUSION

We therefore overrule *Webb* and find that *Risinger* and its progeny do not violate the principles of equal protection. Accordingly, we reverse the family court's decision in this case and remand for a determination of what amount, if any, Father should pay towards Collin's college expenses. Additionally, we hold the family court erred in reducing Father's child support obligation for Jamie below the amount in the temporary order and in not awarding Mother attorney's fees and costs.

TOAL, C.J. and KITTREDGE, J., concur. BEATTY, J., dissenting in part in a separate opinion in which PLEICONES, J., concurs.

Justice BEATTY.

I respectfully dissent in part. Unlike the majority, I do not believe a family court has jurisdiction to order a parent to pay college tuition as an incident of child support. Accordingly, I would hold that a parent has no legal obligation to pay college expenses for a child who has reached the age of majority.

In my view, our decision in this case should not be based on an assessment of the equal protection challenge. Instead, I believe we must *sua sponte* address the more fundamental issue of whether the family court has jurisdiction to order a parent to pay college tuition as an incident of continuing child support. *See Travelscape, L.L.C. v. S.C. Dep't of Revenue,* 391 S.C. 89, 109 n. 10, 705 S.E.2d 28, 38 n. 10 (2011) (recognizing that this Court may *sua sponte* address an issue involving subject matter jurisdiction); *Amisub of S.C., Inc. v. Passmore,* 316 S.C. 112, 114, 447 S.E.2d 207, 208 (1994) (stating that the appellate court must always take notice of the lack of subject matter jurisdiction).

In my opinion, a review of the decision in *Risinger* reveals that it effectively expands the jurisdiction of the family court beyond what the Legislature has authorized. Furthermore, I believe the holding in *Risinger* violates the well-established tenets of our rules of statutory construction.

Central to my analysis of this case is a detailed review of section 63–3–530 of the South Carolina Code, which identifies forty-six areas over which the family court has exclusive jurisdiction. S.C.Code Ann. § 63–3–530 (2010) (previously codified at sections 14–21–810 and 20–7–420). Subsection 14 grants the family court jurisdiction to order child support. *Id.* § 63–3–530(A)(14) ("The family court has exclusive jurisdiction to order support of a . . . child."). Our Legislature has defined a child as "a person under the age of eighteen." *Id.* § 63–1–40(1) (formerly codified at section 20–7–30). In view of these inextricably linked code sections, I believe the Legislature clearly established the general rule that a parent's payment of child support terminates once a child has reached the age of eighteen.

Section 63–3–530(A)(17), however, provides an exception to this general rule, stating that the family court has exclusive jurisdiction:

To make all orders for support run until further order of the court, except that orders for child support run until the child is eighteen years of age or until the child is married or becomes self-supporting, as determined by the court, which-ever occurs first; or without further order, past the age of eighteen years if the child is *enrolled and still attending high school, not to exceed high school graduation* or the end of the school year after the child reaches nineteen years of age, whichever is later; or in accordance with a preexisting agreement or order to provide for child support past the age of eighteen years; or in the discretion of the court, to provide for child support past age eighteen where there are physical or mental disabilities of the child or other excep-tional circumstances that warrant the continuation of child support beyond age eighteen for as long as the physical or mental disabilities or exceptional circumstances continue.

*Id.* § 63–3–530(A)(17) (previously codified at section 14–21–810(b)(4)) (emphasis added).

This section is silent with respect to a parent's payment of college expenses for a child who has reached the age of majority. Instead, the above-emphasized language, which ex-plicitly deals with a child's education, clearly expresses the legislative intent that a family court may only order a parent to pay child support until a child's high school graduation or until the end of a school year after the child reaches nineteen years of age. Had the Legislature intended for a parent to pay college expenses as an incident of continuing child sup-port, I believe it would have specifically included the phrase "college graduation." Because the Legislature has not author-ized the family court to order such support, we must give effect to this legislative intent and conclude that the family court lacks jurisdiction to order a parent to pay college tuition as an incident of child support. *See Mid–State Auto Auction of Lexington, Inc. v. Altman,* 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996) (recognizing that the primary rule of statutory construction is to ascertain and give effect to the intent of the Legislature).

Moreover, the Legislature explicitly limited the jurisdiction of the family court over matters concerning a child's post-majority financial situation. Pursuant to subsection 17, the family court may order payment of child support past the age

of eighteen where: (1) the child has a physical or mental disability; or (2) "exceptional circumstances" are present. *Id.* § 63-3-530(A)(17).

By its very terms, the "age of majority" implies that a person has become self-sufficient and is responsible for his or her own financial endeavors. *See* S.C. Const. art. XVII, § 14 ("Every citizen who is eighteen years of age or older, not laboring under disabilities prescribed in this Constitution or otherwise established by law shall be deemed sui juris and endowed with full legal rights *and responsibilities . . . .*" (emphasis added)); *see also Style v. Shaub,* 955 A.2d 403, 408 (Pa.Super.Ct.2008) (defining the "age of majority" as "either eighteen years of age or when the child graduates from high school, whichever comes later"); 27C C.J.S. *Divorce* § 1106 (Supp.2010) (stating that "as an exception to the general rule that the obligation of a divorced parent to provide child support terminates upon the child reaching majority, a financially able divorced parent may be required to support an adult child who, by reason of physical or mental disability, is unable to support himself or herself").

Contrary to these clear restrictions on a child's right to receive financial support beyond the age of majority, the Court in *Risinger* classified a college education as an "exceptional circumstance." In my view, this assessment was erroneous and should not serve as authority for the majority's decision to legally obligate a parent to pay for a child's post-majority college education.

Initially, as previously indicated, this language is outside the parameters of the educational provisions of section 63-3-530(A)(17). Furthermore, taken to its logical extreme, there would be no "cut-off" date for this legal obligation as any child of divorce, including "adult" children, would be entitled to financial support from a parent. I do not believe this is what the Legislature intended by promulgating section 14-21-810(b)(4).

Notably, none of the cases that have cited *Risinger* in the past thirty years have involved a statutory or constitutional analysis of section 14-21-810(b)(4). Thus, I do not believe the majority can blindly adhere to *Risinger* and its progeny to justify its holding. Because the Legislature has not author-

ized the family court to order such support or created a statutory obligation for a divorced parent to pay for an adult child's post-secondary education, I would overrule *Risinger* and, in turn, affirm our decision in *Webb*.

Based on my conclusion regarding the family court's lack of jurisdiction, I do not believe it is necessary to address the constitutional implications of section 63–3–530(A)(17). Additionally, I would note that Father had previously agreed to pay a portion of Collin's college expenses. Thus, the resolution of the instant case is not dependent upon a review of *Webb*. Accordingly, I would decline to revisit that opinion and to address the equal protection issue. *See In re McCracken,* 346 S.C. 87, 92, 551 S.E.2d 235, 238 (2001) ("[I]t is this Court's firm policy to decline to rule on constitutional issues unless such a ruling is required."). However, given the majority's decision to rule on these issues, I must express my disagreement with the majority's analysis.

The equal protection clauses of our federal and state constitutions declare that no person shall be denied the equal protection of the laws. U.S. Const. amend. XIV, § 1; S.C. Const. art. I, § 3. Equal protection "requires that all persons be treated alike under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed." *GTE Sprint Commc'ns Corp. v. Pub. Serv. Comm'n of S.C.,* 288 S.C. 174, 181, 341 S.E.2d 126, 129 (1986) (quoting *Marley v. Kirby,* 271 S.C. 122, 123–24, 245 S.E.2d 604, 605 (1978)). "Courts generally analyze equal protection challenges under one of three standards: (1) rational basis; (2) intermediate scrutiny; or, (3) strict scrutiny." *Denene, Inc. v. City of Charleston,* 359 S.C. 85, 91, 596 S.E.2d 917, 920 (2004). "If the classification does not implicate a suspect class or abridge a fundamental right, the rational basis test is used." *Id.* "Under the rational basis test, the requirements of equal protection are satisfied when: (1) the classification bears a reasonable relation to the legislative purpose sought to be affected; (2) the members of the class are treated alike under similar circumstances and conditions; and, (3) the classification rests on some reasonable basis." *Id.*

In view of the above-outlined law, it is arguable that this case should be analyzed under the strict scrutiny test as the

reduction of a parent's income clearly impinges upon a fundamental property right. *See Wingfield v. S.C. Tax Comm'n*, 147 S.C. 116, 152, 144 S.E. 846, 858 (1928) ("The court appreciates the earnest plea that every person is entitled to the enjoyment of life, liberty, and property, and to the equal protection of the laws guaranteed by the federal and state Constitutions, and will protect and safeguard these fundamental rights to the extent, if necessary, of declaring invalid any legislative enactment clearly shown to be in violation of them."). I cannot conceive of any plausible argument that could withstand this heightened level of scrutiny. Moreover, as will be discussed, I believe there is an equal protection violation even under the rational basis test, the lowest level of scrutiny.

For several reasons, I disagree with the majority's conclusion that requiring a parent to pay, as an incident of child support, for post-secondary education is rationally related to the State's interest in ensuring the education of our state's youth.

Initially, I would note that the out-of-state cases relied upon by the majority are distinguishable in that underlying those decisions is a statute that specifically provides for the payment of college expenses beyond the age of majority.[9] In contrast, section 63–3–530(A)(17) is silent with respect to the payment of college expenses. Despite the lack of this provision, the

9. *See Kujawinski v. Kujawinski*, 71 Ill.2d 563, 17 Ill.Dec. 801, 376 N.E.2d 1382, 1390 (1978) (analyzing section 513 of the 1977 Illinois Revised Statutes, which states in relevant part, "The Court also may make such provision for the education and maintenance of the child or children, whether of minor or majority age, out of the property of either or both of its parents as equity may require, whether application is made therefor before or after such child has, or children have, attained majority age."); *In re Marriage of Vrban*, 293 N.W.2d 198, 201–02 (Iowa 1980) (interpreting section 598.1(2) of the 1977 Iowa Code which provides that "child support" may include support "for a child who is between the ages of eighteen and twenty-two years who is regularly attending an approved school ..., or is, in good faith, a full-time student in a college, university, or area school; or has been accepted for admission to a college ..."); *LeClair v. LeClair*, 137 N.H. 213, 624 A.2d 1350, 1357 (1993) (interpreting sections 458:17 and 458:20 of the New Hampshire Revised Statutes that specifically provide for a divorced parent's payment of reasonable college expenses for an adult child), *superseded by*, N.H.Rev.Stat. Ann. § 461 (2005) (enactment of "Parental Rights and Responsibilities Act").

Court in *Risinger* interpolated into the statute a legal obligation for a parent. In my opinion, this was in error as a parent's only financial responsibility for a child's college expenses emanates from a moral obligation.

In reaching its decision, the majority seizes upon this moral obligation. A moral obligation, however, cannot substantiate the imposition of a legal obligation. Although I am cognizant of the deleterious financial and emotional effects of divorce, these alone do not justify disparate treatment of children of divorced families and children of intact families. The children are similarly situated in that they are over the age of eighteen and desire parental financial support for college education. *See Grant v. S.C. Coastal Council,* 319 S.C. 348, 354, 461 S.E.2d 388, 391 (1995) ("The *sine qua non* of an equal protection claim is a showing that similarly situated persons received disparate treatment."). In analyzing this distinction, the question becomes whether section 63–3–530(A)(17), as interpreted in *Risinger,* creates a legal duty that is confined to situations of separated, divorced, or unmarried parents and their children. Thus, I disagree with the majority's class designation because I believe the class created by section 63–3–530(A)(17) is composed of separated, divorced, or unmarried parents and their children versus the parents and children of intact families. In my opinion, the State does not have a legitimate interest in treating separated, divorced, or unmarried parents and their children differently than their intact counterparts.[10]

In reaching this conclusion, I am persuaded by the factually-similar case of *Curtis v. Kline,* 542 Pa. 249, 666 A.2d 265, 270 (1995), wherein the Pennsylvania Supreme Court refutes the majority's position that only children of divorce are entitled to post-majority financial support from their parents.

10. Furthermore, I would note that the majority defines the class as "divorced versus non-divorced parents," and distinguishes the class designation in *Webb* as "parents subject to a child support order at the time of emancipation versus those who are not subject to one." In my view, this distinction is inconsequential given the rarity of a divorce decree involving children that does not include a child support provision and the existence of a child support order involving an intact family. Thus, I believe the majority's class designation is the same as the one espoused in *Webb.*

In *Curtis*, the court held that a statute requiring separated, divorced, or unmarried parents to provide post-secondary educational support to their adult child violated the Equal Protection Clause of the Fourteenth Amendment. *Curtis*, 666 A.2d at 270. In so holding, the court reasoned:

Act 62 classifies young adults according to the marital status of their parents, establishing for one group an action to obtain a benefit enforceable by court order that is not available to the other group. The relevant category under consideration is children in need of funds for a post-secondary education. The Act divides these persons, similarly situated with respect to their need for assistance, into groups according to the marital status of their parents, i.e., children of divorced/separated/never-married parents and children of intact families.

It will not do to argue that this classification is rationally related to the legitimate governmental purpose of obviating difficulties encountered by those in non-intact families who want parental financial assistance for post-secondary education, because such a statement of the governmental purpose assumes the validity of the classification. Recognizing that within the category of young adults in need of financial help to attend college there are some having a parent or parents unwilling to provide such help, the question remains whether the authority of the state may be selectively applied to empower only those from non-intact families to compel such help. We hold that it may not. In the absence of an entitlement on the part of any individual to post-secondary education, or a generally applicable requirement that parents assist their adult children in obtaining such an education, ... we perceive no rational basis for the state government to provide only certain adult citizens with legal means to overcome the difficulties they encounter in pursuing that end.

*Id.* at 269–70; *see Grapin v. Grapin*, 450 So.2d 853, 854 (Fla.1984) (recognizing that the "societal ideal of continued parental support for the education and training" of adult children did not create a legal duty, and characterizing a family court's order to do so as an "indirect method of compelling unwilling divorced parents to provide college costs for their capable adult children").

In view of the foregoing, I believe that *Risinger* is a fallacy borne of noble purpose. Noble purpose, notwithstanding, this Court has no authority to legislate from the bench. Consequently, I would reverse the family court's order with respect to Father's payment of Collin's college expenses as I cannot cavalierly disregard the Legislature's express limitations on the family court's jurisdiction and the obvious equal protection deficiency of the *Risinger* decision.

PLEICONES, J., concurs.