500 S.E.2d 198

**Timothy W. JAMES and Brenda James, Respondents,**

v.

**Debra B. LISTER, M.D., The Emergency Medicine Specialists of Conway Hospital, P.A., James C. Hughes, III, M.D., Coastal Surgical, P.A., and Conway Hospital, Inc., Defendants,**

**of whom Conway Hospital, Inc., is, Appellant.**

**No. 2843.**

Court of Appeals of South Carolina.

Heard Feb. 4, 1998.

Decided May 11, 1998.

Rehearing Denied June 19, 1998.

S.E.2d 758 (1996). *Osborne v. Allstate Ins. Co.,* 96–MO–00222 (S.C. Sup.Ct. filed October 10, 1996).

278

John B. McCutcheon, Jr., of McCutcheon, McCutcheon & Baxter, Conway; and Stephen P. Groves, J. Rutledge Young, Jr., and Stephen L. Brown, all of Young, Clement, Rivers & Tisdale, Charleston, for appellant.

Glenn V. Ohanesian, of Ohanesian & Ohanesian, Myrtle Beach; and O. Fayrell Furr, of Furr & Henshaw, Myrtle Beach, for respondents.

HOWARD, Judge:

This case arises from the trial of a medical negligence action brought by Timothy and Brenda James (the Jameses) which resulted in a $1,500,000 jury verdict against Conway Hospital (Conway). Conway appeals the post trial denial of their motion to alter or amend judgment to conform to the statutorily mandated recovery cap for charitable organizations of $200,000 set by S.C.Code Ann. § 33–55–210 (1990).[1] Conway also appeals the admission of expert testimony regarding future damages and the trial court's denial of Conway's motion for directed verdict. We affirm.

## FACTS

On February 3, 1989, Timothy James (James) sustained multiple injuries in a single car accident. Horry County EMS immobilized James at the scene of the accident and transported him to Conway Hospital. James was uncooperative with the medical personnel, and could not be subdued by the administration of Valium. Because of his agitated state, Dr. Lister could not determine from x-rays whether James had a spine injury. Dr. Lister consulted with Dr. Hughes, who made several recommendations for James's care. Dr. Hughes also ordered that more x-rays be taken the following morning. During the night, a nurse assigned to James determined he

---

1. Section 33–55–210 was amended by S.C.Code Ann. § 33–56–180 (Supp.1997) in 1994. Because the cause of action by the Jameses against Conway accrued in 1989, we direct our inquiry to the statute in effect at the time of the accident.

was not moving his legs. She did not notify a doctor of this observation. An orthopaedic surgeon viewed the x-rays taken the next morning and determined James had a broken neck. James was then transported to McLeod Regional Medical Center in Florence. Upon his arrival, a doctor found him to be a quadriplegic.

James sued the doctors, Emergency Medicine Specialists of Conway Hospital, Coastal Surgical, and Conway Hospital for medical malpractice. Brenda James (Brenda) also sued for loss of consortium. Neither joined the nurse as a defendant. At the close of the trial, the jury found Dr. Lister, Dr. Hughes, Emergency Medicine Specialists of Conway Hospital, and Coastal Surgical free of liability. The jury rendered a verdict against Conway Hospital for $1,000,000 to James and $500,000 to Brenda. Conway then moved to alter or amend the judgment to conform to S.C.Code Ann. § 33–55–210(A), which provides a liability limit of $200,000, asserting for the first time that it was a charitable hospital. Conway also moved for judgment notwithstanding the verdict (jnov), new trial, and new trial nisi remittitur.

## ISSUES

I. Is the limitation on liability afforded by section 33–55–210(A) an affirmative defense which must be pled prior to trial?

II. Did the trial court err in denying Conway's motion to amend its answer in order to assert the limitation of liability for charitable institutions?

III. Did the trial court err in denying Conway's directed verdict motion based on the plaintiff's failure to show proximate cause?

IV. Did the trial court err in admitting expert testimony as to future damages?

## LAW/ANALYSIS

### I. LIMITATION ON LIABILITY AS AN AFFIRMATIVE DEFENSE

Conway first argues the trial court erred in holding that the limitation on liability afforded by section 33–55–

210(A) is an affirmative defense which must be pled. The trial court reasoned that the plaintiff would be prejudiced by allowing Conway to assert its charitable organization status after the verdict. We agree that the Jameses were prejudiced by Conway's failure to plead the recovery limit and affirm the trial court.

Section 33–55–210(A) provides a limit on recovery of $200,-000 for charitable organizations. The section also bars recovery against the employees of charitable organizations whose acts give rise to the claim against the organization. However, the statute states an employee may be held liable if:

it is alleged and proved in the action that the employee acted in a reckless, wilful, or grossly negligent manner, and, in such case, the employee must be properly joined as a party defendant. No judgment against an employee of a charitable organization may be returned unless a specific finding is made that the employee acted in a reckless, wilful, or grossly negligent manner.

S.C.Code Ann. § 33–55–210(A) (1990).

Conway argues that charitable status is not an issue properly tried to a jury, and therefore, the Jameses were not legally prejudiced by Conway's failure to so plead. We disagree. Although charitable status is not a jury issue, the invocation of this protection triggers alternative remedies for the injured plaintiff. Section 33–55–210(A) provides a mechanism for seeking damages in excess of the charitable limitation, through an action against a charitable organization's employees. In such instances, the statute specifically requires joinder of the employee as a party, and a special finding by the jury that the employee was proved guilty of gross negligence as a proximate cause of the injury. Indirectly, then, Conway's failure to raise its charitable status as an affirmative defense affected both the parties to the action and the manner in which the case was tried to the jury, including what issues were or were not presented to them for resolution.

This case demonstrates clearly how the charitable status defense affects the trial of the case to the jury. The Jameses had no notice that another party was necessary and that they would be required to prove a greater degree of negligence in order to recover damages in excess of $200,000. We therefore

conclude that section 33–55–210(A) constitutes an affirmative defense which must be pled or waived, as required by Rule 8(c), SCRCP.

Previous South Carolina cases support this requirement of pleading matters which may prejudice the opposing party by introducing issues which may affect the proof at trial. In the case of *Washington v. Whitaker*, 317 S.C. 108, 451 S.E.2d 894 (1994), our supreme court held that sovereign immunity must be affirmatively pled. Similarly, in the case of *Niver v. South Carolina Dep't of Highways and Public Transp.*, 302 S.C. 461, 395 S.E.2d 728 (Ct.App.1990), this court held, under the South Carolina Tort Claims Act (SCTCA), "[t]he burden of establishing a limitation upon liability or an exception to the waiver of immunity is upon the governmental entity asserting it as an affirmative defense." *Id.* at 463, 395 S.E.2d at 730.

Conway argues that these cases are distinguishable from the case at bar because both the SCTCA and sovereign immunity act as complete bars to a party's recovery. This argument mischaracterizes the law as applied in these cases. In *Washington*, sovereign immunity was asserted as a defense to punitive damages. *Washington v. Whitaker*, 317 S.C. 108, 451 S.E.2d 894 (1994) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (holding that a municipality is immune from punitive damages)). Immunity from punitive damages cannot be characterized as a complete bar to a plaintiff's claim. This reasoning also overlooks the fact that by limiting the plaintiff to actual damages, the immunity from punitive damages affects the manner in which the case is tried to the jury.

As to the SCTCA, though it potentially acts as a bar to a plaintiff's claim, it also "provide[s] for liability on the part of the State, its political subdivisions, and employees, while acting within the scope of official duty, only to the extent provided" within the Act. S.C.Code Ann. § 15–78–20 (Supp. 1997). Therefore, the SCTCA acts as a bar to a plaintiff's claim in certain circumstances, but also may act as a limit on liability in other circumstances. The cases requiring the SCTCA to be pled as an affirmative defense do not differentiate between claims in which the defense may act as a complete bar and claims in which the defense merely limits liability.

*See Rakestraw v. South Carolina Dep't of Highways and Pub. Trans.*, 323 S.C. 227, 473 S.E.2d 890 (Ct.App.1996); *Niver v. South Carolina Dep't of Highways and Public Transp.*, 302 S.C. 461, 395 S.E.2d 728 (Ct.App.1990).

Conway argues that we should adopt the reasoning from other jurisdictions which do not require a limit on immunity to be pled as an affirmative defense. However, our research indicates that only a few cases in other jurisdictions hold a statutorily mandated recovery limit which requires additional proof at trial does not constitute an affirmative defense.[2] A far greater number of jurisdictions have concluded either that 1) a limit on recovery must be plead as an affirmative defense or 2) a recovery limit could constitute an affirmative defense if the limit affects proof at trial.[3] Given the current holdings in *Washington, Niver,* and *Rakestraw*, we believe the view which requires the pleading of liability limits that affect proof at trial is consistent with South Carolina law.

---

**2.** *Mitchell v. State, Through Dep't of Transp. and Dev.*, 596 So.2d 353 (La.Ct.App.1992) (holding that a Louisiana statute limiting damages did not create an affirmative defense, but imposed a limitation on liability); *Ryland v. Liberty Lloyds Ins. Co.*, 617 So.2d 583 (La.Ct.App.1993) (affirming *Mitchell* ), *rev'd and modified on other grounds*, 630 So.2d 1289 (La.1994).

**3.** *See Taylor v. United States*, 821 F.2d 1428 (9th Cir.1987) (where no factual issue is raised by the limit on liability, defendants not required to raise the liability limit prior to judgment); *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir.1987) (Texas statutory cap on medical malpractice recovery must be pled as an affirmative defense because "[c]entral to requiring the pleading of affirmative defenses is the prevention of unfair surprise."); *Lucas v. United States*, 807 F.2d 414 (5th Cir.1986) (failure to plead cap on malpractice damages did not waive defense where application of the cap was a legal issue and one which required no factual proof); *Jakobsen v. Massachusetts Port Auth.*, 520 F.2d 810 (1st Cir.1975) (holding the failure to plead a statutory cap is a waiver of the defense unless the defense was tried by implied consent at trial); *Westfarm Assocs. Ltd. Partnership v. International Fabricare Inst.*, 846 F.Supp. 439 (D.Md.1993) (holding that the Local Government Tort Claims Act limits liability which effects factual issues at trial and, therefore, constitutes an avoidance); *Anderson v. City of Milwaukee*, 208 Wis.2d 18, 559 N.W.2d 563, 569 (1997) (liability cap is not an affirmative defense, provided "[e]vidence adduced at trial, or control of that evidence is unaffected by a failure to plead the cap and the plaintiff is, or ought to be, well aware of the special nexus between the municipality and the damage cap.") (quoting *Snyder v. City of Minneapolis*, 441 N.W.2d 781, 788 (Minn.1989)).

Finally, Conway argues that *Broome v. Watts,* 319 S.C. 337, 461 S.E.2d 46 (1995) is dispositive of the issue of whether the recovery limit established by section 33–55–210(A) is an affirmative defense. We disagree.

In *Broome,* the plaintiffs sued the defendant for personal injury arising out of an automobile wreck. The plaintiffs received a settlement of $50,000 from the defendant's insurance company. The plaintiffs proceeded to trial under their underinsured motorist insurance. At trial, the jury awarded the plaintiffs $97,500. The trial court set off the settlement payment against the verdict. The plaintiffs argued this was improper because set off was not pled as an affirmative defense. The supreme court held:

> This argument is without merit. First, Rule 8(c) does not list set off as an affirmative defense which must be pled in order to be pursued at trial. Second, the set off which was granted in this case does not fall within the 8(c) catchall of "any other matter constituting an avoidance or affirmative defense." Set off was statutorily mandated, was not a matter properly triable to a jury, and therefore was not a matter constituting an affirmative defense which [the defendant] was under a duty to plead and prove.

*Id.* at 342, 461 S.E.2d at 49.

The case at bar differs significantly from *Broome.* The plaintiff in *Broome* had full knowledge of the prior settlement and, therefore, was not prejudiced by the trial judge's decision to set off the verdict. Unlike this case, the set off asserted in *Broome* affected none of the issues or parties at trial. Therefore, *Broome* is not dispositive of the issue in this case.

## II. AMENDED ANSWER

After the trial court ruled that the limitation on liability constituted an affirmative defense which must be pled, the court denied Conway's motion to amend its answer to assert the liability cap permitted by section 33–55–210(A). As our supreme court stated in *Arnold v. State,* 309 S.C. 157, 420 S.E.2d 834 (1992),

> When a party wishes to amend a pleading after final judgment from a full trial on the merits, South Carolina Rule of Civil Procedure 15(b) applies. Amendments under South

Carolina Rule of Civil Procedure 15(b) are allowed not to assert new claims, but rather to conform the pleadings to the evidence presented at trial.

*Id.* at 172, 420 S.E.2d at 842.

Even if the amendment could properly have been considered by the court at that stage of the proceeding, as we have already determined, allowing the amendment would have prejudiced the Jameses. Accordingly, we find that the trial court did not abuse its discretion in denying Conway's motion to amend.

## III.  DIRECTED VERDICT

Conway next asserts the trial court erred in denying its motion for directed verdict based on the plaintiff's failure to establish proximate cause. We disagree.

In ruling on a motion for directed verdict, the court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Gamble v. International Paper Realty Corp.*, 323 S.C. 367, 474 S.E.2d 438 (1996). When the evidence yields only one inference, a directed verdict in favor of the moving party is proper. *Cock–N–Bull Steak House, Inc. v. Generali Ins. Co.*, 321 S.C. 1, 466 S.E.2d 727 (1996).

> In a medical malpractice action, it is incumbent on the plaintiff to establish proximate cause as well as ... negligence.... Negligence is not actionable unless it is a proximate cause of the injury complained of, and negligence may be deemed a proximate cause only when without such negligence the injury would not have occurred or could have been avoided. When one relies solely upon the opinion of medical experts to establish a causal connection between the alleged negligence and the injury, the experts must, with reasonable certainty, state that in their professional opinion, the injuries complained of most probably resulted from the defendant's negligence.... When it is the only evidence of proximate cause relied upon, it must provide a significant causal link between the alleged negligence and the plaintiff's injuries, rather than a tenuous and hypothetical connection.

*Ellis v. Oliver,* 323 S.C. 121, 125, 473 S.E.2d 793, 795 (1996) (citations omitted).

█ Conway argues the testimony of Ms. Ford, the nursing expert, failed to establish to a reasonable degree of medical certainty that James's injuries were proximately caused by the nurse's breach of the standard of care. Although Ms. Ford testified to the standards for nursing care in the circumstances, Conway insists she did not opine that the nurse's failures were, to a reasonable degree of medical certainty, a proximate cause of James's injury. She could only state that it was possible. However, Dr. McHugh testified that the nurse's breach of duty was a proximate cause of James's injuries.

█ South Carolina law permits a doctor to testify to the standard of care for nurses. *See McMillan v. Durant,* 312 S.C. 200, 439 S.E.2d 829 (1993). Further, the testimony of one witness may bolster the testimony of another witness. *See O'Tuel v. Villani,* 318 S.C. 24, 455 S.E.2d 698 (Ct.App.1995) (finding there is nothing improper about one witness testifying to a breach of standard of care and the other as to proximate cause). The testimony of Ms. Ford and Dr. McHugh, taken together, establish the requisite inference that James proved proximate causation. Accordingly, the trial court did not err in denying Conway's motion for directed verdict.

## IV. EXPERT TESTIMONY

█ Conway next argues the trial court erred in allowing an expert economist to testify to the cost of future medical supplies and needs because the expert relied on the estimate of James's future needs supplied by his attorney. We find no merit to this argument. The expert witness was presented to the jury for the purpose of estimating the present cost of James's future necessities. The testimony was undisputed that James is permanently paralyzed, and had lived in that condition for several years prior to trial. Both James and his wife testified thoroughly to the medical supplies James currently requires on a daily basis. We find sufficient evidence was presented in this testimony, coupled with the overwhelming evidence of permanency, to establish a basis for the expert to calculate the present cost of future supplies.

For the foregoing reasons, the judgment of the trial court is **AFFIRMED.**

ANDERSON and HUFF, JJ., concur.