# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Carla Denise Garrison and Clint Garrison, Petitioners-Respondents,

v.

Target Corporation, Respondent-Petitioner.

Appellate Case No. 2020-000523

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Anderson County
R. Keith Kelly, Circuit Court Judge

---

Opinion No. 28080
Heard May 26, 2021 – Filed January 26, 2022

---

## AFFIRMED AS MODIFIED IN PART, REVERSED IN PART, AND REMANDED

---

Joshua Thomas Hawkins and Helena LeeAnn Jedziniak, both of Hawkins & Jedziniak, LLC, of Greenville; and John B. Howell, III, of Jackson, Tullos & Rogers, PLLC, of Hattiesburg, Mississippi, all for Petitioners-Respondents.

Lewis F. Powell, III and George P. Sibley, III, both of Hunton Andrews Kurth LLP, of Richmond, Virginia; John Carroll Moylan, III, Henry L. Parr, Jr., and Wallace K. Lightsey, all of Wyche, P.A., of Columbia; and Knox L.

Haynsworth, III, of Brown, Massey, Evans, McLeod & Haynsworth, LLC, of Greenville, all for Respondent-Petitioner.

Brooks Roberts Fudenberg, of Law Offices of Brooks R. Fudenberg, LLC, and C. Steven Moskos, of C. Steven Moskos, P.A., both of Charleston, for Amici Curiae Daniel O'Shields and Roger W. Whitley.

William Grayson Lambert, of Burr & Forman, LLP, of Columbia, for Amici Curiae Chambers of Commerce and Industry Groups.

---

**CHIEF JUSTICE BEATTY:** We granted cross-petitions for a writ of certiorari to review *Garrison v. Target Corporation*, 429 S.C. 324, 838 S.E.2d 18 (Ct. App. 2020) and determine whether the court of appeals erred in (1) affirming the trial court's denial of Target's motion for a judgment notwithstanding the verdict (JNOV) as to liability based on a theory of constructive notice; (2) holding the statutory cap on punitive damages pursuant to section 15-32-530 of the South Carolina Code (Supp. 2020) is an affirmative defense; (3) instructing the trial court to consider on remand the potential harm caused by Target's conduct in evaluating the constitutionality of the amount of punitive damages; and (4) refusing to award interest on punitive damages under Rule 68, SCRCP. We affirm as modified in part, reverse in part, and remand this matter to the trial court for further proceedings consistent with this opinion.

## I. FACTS

On the evening of May 21, 2014, Denise Garrison went to Target in Anderson, South Carolina with her eight-year-old daughter. Upon her arrival at the store, Denise parked her car in Target's parking lot, and she and her daughter exited the vehicle. Before entering the store, however, Denise retrieved her coupon book from her car, placed it on the hood, and proceeded to examine it. Suddenly, holding what appeared to be a hypodermic needle in her hand, her daughter showed the object to Denise and asked, "Mommy, what is this?" Denise responded instinctively by swatting the syringe out of her daughter's hand.

Immediately, Denise noticed the syringe had punctured the palm of her hand, as a bead of blood started to form, and she and her daughter rushed into the store's

bathroom where she washed her hands repeatedly, four or five times. Denise and her daughter both became very upset at what had just occurred, and Denise called her husband, Clint, to tell him what happened. He told her to notify a Target employee of the incident so the syringe could be removed from the parking lot. Denise informed Target's store manager, who apologized for what happened. In fact, Denise believed the manager assured her that her medical bills would be paid, testifying that the manager said "bring us the bill." The manager completed a guest incident report, detailing Denise's description of the incident and listing the cause as a needle in the parking lot. She also accompanied Denise to the parking lot to retrieve the syringe, and in her testimony, described it as "dirty and dingy" and that it looked like it had "some wear on it." Nevertheless, the manager indicated in an investigation report that she did not see a needle in the syringe.

The next day, Denise visited the emergency room, where she was treated for a needle prick/stick. However, the ER nurse told Denise there was nothing further they could do and referred her to an infectious disease specialist, Dr. Potts. The doctor prescribed Denise several medications to prevent her from developing HIV or hepatitis. The medications caused her to feel dizzy, lose her balance, have an upset stomach, have vivid night terrors, and put her into a "zombie-like state." Denise also had to undergo blood draws every three months for a year to confirm she had not been infected with a disease.

Soon after Denise began taking the medications, she received a phone call from Target's investigator, who asked if she thought Target was responsible for her injury. Denise told him she thought they were supposed to take care of the parking lot and that she just wanted her medical bills and lab work paid. However, despite Denise's belief that Target would cover her medical costs, Target refused to do so. Subsequently, Denise filed an action against Target seeking damages for negligence, including punitive damages. Shortly thereafter, Denise submitted to Target a $12,000 offer of judgment, which Target did not accept. Denise, along with her husband, proceeded to file a second action against Target, asserting causes of action for negligence and loss of consortium. Target moved for summary judgment on all claims, which the court denied. The case proceeded to a jury trial from September 6-8, 2016, following consolidation of the two actions.

At trial, Target's store manager testified the store did not have a formal policy regarding regular cleaning and maintenance of the parking lot but noted that cart attendants keep a lookout for dangers when they retrieve carts from the parking lot. She also testified that Target employs a property maintenance technician who walks the property in the mornings, but he only works until 2:30 p.m. In addition, the manager explained that after she took possession of the syringe on the night of the

incident, she thought a co-worker had disposed of it but later learned that it was still at the store. However, the syringe became lost again and was not available at trial. Nevertheless, the parties were able to show the jury photographs of the syringe. Because of the loss of the syringe, the trial court gave a jury instruction, without objection, on the doctrine of spoliation of evidence.

Target's property maintenance technician testified regarding his "walk the vibe" inspections of the premises and submitted a two-page log demonstrating several dates on which he completed this task. However, the log contained noticeable errors, such as classifying two consecutive dates as being a Monday. Significantly, he testified that a cleaning truck comes to Target on Thursday evenings to clean the parking lot but could not recall the name of the company that Target employs for the service. He also indicated they do not keep any records confirming that a company cleans Target's premises. Instead, he walks the property to make sure that large debris has been removed and the sidewalks have been cleared. He also testified he was not aware of any video evidence capturing the incident or confirming that the parking lot is regularly cleaned and maintained.

In addition, Clint Garrison testified that on one occasion, after Denise's injury, a bolt had come loose from a shopping cart corral and had fallen onto the ground in the parking lot. On several subsequent occasions, he returned to the same location and found the bolt was still in the parking lot over four months later. At one point, he thought the entire corral was in such poor condition that it was about to fall down. He also testified to finding a spring and rod laying in the grass on the curb near the area where Denise was injured and that both objects remained there in the parking lot for at least thirteen days. Further, Clint was questioned about photographs depicting the syringe and surrounding area from the day of the incident and testified that he believed the syringe had been on the ground for more than two hours, two days, or even two weeks. He also noted a piece of twine located near the syringe was discolored and appeared to have been run over by a vehicle, and a nearby cigarette butt was weathered, leading him to believe the syringe had also been there awhile. Upon learning that Target employs a cleaning truck to sweep the parking lot on Thursday evenings, Clint decided to stay up all night on one particular Thursday to see if it was true. He arrived at Target at approximately 11:45 p.m. and stayed until 5:30 a.m. the next morning, but no cleaning truck ever came to clean the parking lot.[1]

---

[1] The evidence the Garrisons presented at trial was admitted without objection. *See Cantrell v. Carruth*, 250 S.C. 415, 421, 158 S.E.2d 208, 211 (1967) (noting when

At the close of the Garrisons' case, both parties moved for a directed verdict, which the court denied. Other than cross-examining the Garrisons' witnesses, Target did not put on a case-in-chief. Ultimately, the jury found Target was negligent and awarded Denise $100,000 in compensatory damages and $4.51 million in punitive damages. The jury also awarded Clint $3,500 for lost wages and $5,000 for loss of consortium. Following trial, Target moved for a JNOV as to liability and punitive damages, requesting in the alternative that a new trial absolute or new trial nisi remittitur be granted. Target also moved for a reduction of the punitive damages award to the statutory maximum pursuant to section 15-32-530 of the South Carolina Code (Supp. 2020). In addition, the Garrisons moved to tax costs and interest against Target pursuant to Rules 54 and 68, SCRCP.

Following a hearing on the parties' post-trial motions, the trial court denied Target's motion for a JNOV as to liability, granted Target's motion for a JNOV as to punitive damages, denied the Garrisons' motion to tax costs, and granted the Garrisons' motion for interest. Upon review of the Garrisons' motion for reconsideration, the trial court granted their motion to tax costs and interest in full, including the award of eight percent interest under Rule 68, SCRCP, on Denise's compensatory damages only, since the court had struck the jury's punitive damages award. Regarding Target's motion for a JNOV as to liability, the trial court held:

> [A]lthough there was no direct evidence as to the exact length of time the syringe has been in the parking lot, witnesses testified the syringe was "dingy, dirty and gross," and bore a "weathered" look similar to other items of trash in the parking lot. That testimony, when viewed in the light most favorable to Plaintiffs, leads to the reasonable inference that the syringe was in Target's parking lot long enough to impute constructive knowledge. Thus, judgment as a matter of law is not appropriate on the constructive knowledge issue.

Regarding punitive damages, the trial court determined the evidence did not justify the jury's award. Nevertheless, the court analyzed the constitutionality of the amount of punitive damages awarded but failed to consider the potential harm to Denise and other customers. *See Mitchell, Jr. v. Fortis Ins. Co.*, 385 S.C. 570, 587–88, 686 S.E.2d 176, 185 (2009) (noting "the court should consider the disparity between the

---

testimony is "received, without objection, it becomes competent and cannot be disregarded upon a motion for a nonsuit or directed verdict, but its sufficiency must be left to the jury").

actual or potential harm suffered by the plaintiff and the amount of the punitive damages award").

Thereafter, the parties cross-appealed to the court of appeals, which affirmed in part, reversed in part, and remanded to the trial court. *Garrison v. Target Corp.*, 429 S.C. 324, 838 S.E.2d 18 (Ct. App. 2020). Specifically, the court held there was sufficient evidence of constructive notice to allow the jury to resolve the question of Target's liability. *Id.* at 343, 838 S.E.2d at 28. The court relied on witness testimony regarding the "old, dirty, and nasty" and "weathered" appearance of the syringe and surrounding debris. *Id.* at 341, 838 S.E.2d at 27. The court also held there was sufficient evidence to support the jury's award for punitive damages and reinstated the award but agreed with the trial court that the amount awarded violated due process. *Id.* at 349, 355–56, 838 S.E.2d at 31, 34–35. Nonetheless, the court determined the trial court erred in failing to consider the potential harm to Denise and other customers in evaluating the constitutionality of the amount of punitive damages and remanded the case for further analysis and a remittitur. *Id.* at 354–56, 838 S.E.2d at 34–35.

Moreover, the court of appeals held the statutory cap on punitive damages pursuant to section 15-32-530 constituted an affirmative defense that must be pled or else waived, and because Target failed to plead the cap, the court held its application was waived in this case. *Id.* at 373, 838 S.E.2d at 44. Specifically, the court found the criteria of subsections (B) and (C) of the statute require special findings that "affect [the] proof at trial," and in order to prevent unfair surprise to the Garrisons, the court deemed application of the cap waived. *Id.* at 363–64, 372–73, 838 S.E.2d at 39, 43–44 (quoting *James v. Lister*, 331 S.C. 277, 284, 500 S.E.2d 198, 202 (Ct. App. 1998)). However, the dissenting opinion opined that nothing in the statute requires pleading, and the cap does not have any of the characteristics of an affirmative defense or avoidance because it does not affect liability or require new matter to be asserted. *Id.* at 380–81, 838 S.E.2d at 48 (Hill, J., dissenting).

Lastly, the court of appeals interpreted Rule 68, SCRCP, to hold Denise was not entitled to interest on the jury's punitive damages award, finding the purpose of prejudgment interest is to compensate the plaintiff, while the purpose of punitive damages is to punish the defendant. *Id.* at 377–79, 838 S.E.2d at 46–47 (majority opinion) (relying on cases from the Supreme Courts of Alaska and Nevada to distinguish these purposes). The parties filed cross-petitions for a writ of certiorari requesting this Court to review the court of appeals' decision, and we granted both petitions in their entirety.

## II.  STANDARD OF REVIEW

"When reviewing the trial court's ruling on a motion for a directed verdict or a JNOV, this Court must apply the same standard as the trial court by viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party." *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 331–32, 732 S.E.2d 166, 171 (2012). In these cases, "we reverse only when there is no evidence to support the ruling or when the ruling is governed by an error of law." *Austin v. Stokes-Craven Holding Corp.*, 387 S.C. 22, 42, 691 S.E.2d 135, 145 (2010). "The motions should be denied when either the evidence yields more than one inference or its inference is in doubt." *Gadson ex rel. Gadson v. ECO Servs. of S.C., Inc.*, 374 S.C. 171, 176, 648 S.E.2d 585, 588 (2007). However, "neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence." *Erickson v. Jones St. Publishers, LLC*, 368 S.C. 444, 463, 629 S.E.2d 653, 663 (2006).

"Determining the proper interpretation of a statute is a question of law, which this Court reviews de novo." *Ferguson Fire & Fabrication, Inc. v. Preferred Fire Prot., L.L.C.*, 409 S.C. 331, 339, 762 S.E.2d 561, 565 (2014). Thus, we may interpret statutes "without any deference to the court below." *Brock v. Town of Mt. Pleasant*, 415 S.C. 625, 628, 785 S.E.2d 198, 200 (2016) (quoting *CFRE, LLC v. Greenville Cty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011)). Similarly, "[i]n interpreting the meaning of the South Carolina Rules of Civil Procedure, the Court applies the same rules of construction used to interpret statutes." *S.C. Human Affairs Comm'n v. Chen*, 430 S.C. 509, 519, 846 S.E.2d 861, 866 (2020) (alteration in original) (quoting *Farnsworth v. Davis Heating & Air Conditioning, Inc.*, 367 S.C. 634, 638, 627 S.E.2d 724, 726 (2006)).

## III. DISCUSSION

### A. Constructive Notice

Target argues the court of appeals erred in affirming the trial court's denial of its JNOV motion as to liability for Denise's injury because the Garrisons presented insufficient evidence to prove Target had constructive notice of a dangerous condition on its premises. Specifically, Target claims there was no evidence presented to demonstrate how long the syringe had been in the parking lot prior to Denise's injury such that Target should have discovered and removed it. Instead, in Target's view, the jury was left to speculate based on the weathered and damaged condition of the syringe and photographs of other trash and debris located in the area where the syringe was found. In addition, Target asserts the court of appeals erroneously relied on witness testimony regarding the appearance of the syringe to establish the length of time it had been in the parking lot.

In order for a plaintiff to recover damages for injuries sustained as a result of a dangerous or defective condition on a storekeeper's premises, "the plaintiff must show either (1) that the injury was caused by a specific act of the defendant which created the dangerous condition; or (2) that the defendant had actual or constructive knowledge of the dangerous condition and failed to remedy it." *Wintersteen v. Food Lion, Inc.*, 344 S.C. 32, 35, 542 S.E.2d 728, 729 (2001). A storekeeper "will be charged with constructive notice whenever it appears that the condition has existed for such length of time prior to the injury that, under existing circumstances, he should have discovered and remedied it in the exercise of due care[.]" *Anderson v. Winn-Dixie Greenville, Inc.*, 257 S.C. 75, 77, 184 S.E.2d 77, 77 (1971). However, "[t]he jury should not be permitted to speculate that [a dangerous condition has existed] for such a length of time as to infer that [the] defendant was negligent in failing to detect and remove it." *Wimberly v. Winn-Dixie Greenville Inc.*, 252 S.C. 117, 122, 165 S.E.2d 627, 629 (1969).

We find there was sufficient evidence to support the trial court's decision. *See Curcio v. Caterpillar, Inc.*, 355 S.C. 316, 320, 585 S.E.2d 272, 274 (2003) ("In considering a JNOV, the trial judge is concerned with the existence of evidence, not its weight."); *see also RFT Mgmt. Co.*, 399 S.C. at 331–32, 732 S.E.2d at 171 ("When reviewing the trial court's ruling on a motion for a directed verdict or a JNOV, this Court must apply the same standard as the trial court by viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party."). Not only did the Garrisons present witness testimony and photographs regarding the damaged, weathered appearance of the syringe at the time of the incident, but they also demonstrated Target's troubling lack of cleaning and inspection procedures resulting in a failure to uphold its duty to keep the parking lot in a reasonably safe condition for its customers. *See Henderson v. St. Francis Cmty. Hosp.*, 303 S.C. 177, 180, 399 S.E.2d 767, 768 (1990) ("Although the operator of a parking lot is not an insurer of the safety of those who use the lot, reasonable care must be used by the operator to keep the premises used by invitees in a reasonably safe condition.").

When questioned about Target's cleaning standards and protocols, the store's manager and property maintenance technician were often unable to provide any meaningful information regarding Target's efforts to ensure the parking lot is regularly cleaned and maintained. For example, they testified there is no specific cleaning policy in place, and they do not keep any records indicating that maintenance has been performed. Although Target's store manager explained that cart attendants inspect for hazards in the parking lot when returning carts to the store, she testified that they do not do so on any regular or routine basis. Notably, the

witnesses claimed that a third-party cleaning company was hired to sweep the parking lot on Thursday evenings, but they could not recall the name of the company Target employed nor was there any invoice or other documentation presented which confirmed such a company actually performs this service. Based on this evidence, the jury could reasonably find the syringe had been in the parking lot long enough for Target to discover and remove it in the exercise of due care.

We further hold the spoliation of the syringe while in Target's possession supports the jury's finding of constructive notice. Indeed, the trial court gave a jury instruction, without objection, on the doctrine of spoliation of evidence. *See Kershaw Cty. Bd. of Educ. v. U.S. Gypsum Co.*, 302 S.C. 390, 394, 396 S.E.2d 369, 372 (1990) ("[W]hen evidence is lost or destroyed by a party an inference may be drawn by the jury that the evidence which was lost or destroyed by that party would have been adverse to that party."). At oral argument, counsel for the Garrisons provided several examples of actions that could have been taken to derive additional evidence in support of their constructive notice theory, had the syringe been available at trial: the discovery of a batch or serial number on the syringe tracing back to Target or its purchaser who could have been identified and deposed; testing for fingerprints on the syringe to identify the purchaser or user; and the procurement of expert testimony, and associated testing of the syringe, to approximate how long it would have taken for the syringe to acquire its dirty, dingy appearance.

## B.     Statutory Cap on Punitive Damages

Target contends the court of appeals erred in holding it was required to plead the statutory cap on punitive damages pursuant to section 15-32-530 as an affirmative defense, and because Target did not do so, application of the damages cap was waived in this case. We agree.

Section 15-32-530 provides in relevant part:

(A) Except as provided in subsections (B) and (C), an award of punitive damages may not exceed the greater of three times the amount of compensatory damages awarded to each claimant entitled thereto or the sum of five hundred thousand dollars.

(B) The limitation provided in subsection (A) may not be disclosed to the jury. If the jury returns a verdict for punitive damages in excess of the maximum amount specified in subsection (A), the trial court should first determine whether:

(1) the wrongful conduct proven under this section was motivated primarily by unreasonable financial gain and determines that the unreasonably dangerous nature of the conduct, together with the high likelihood of injury resulting from the conduct, was known or approved by the managing agent, director, officer, or the person responsible for making policy decisions on behalf of the defendant; or

(2) the defendant's actions could subject the defendant to conviction of a felony and that act or course of conduct is a proximate cause of the plaintiff's damages;

If the trial court determines that either item (1) or (2) apply, then punitive damages must not exceed the greater of four times the amount of compensatory damages awarded to each claimant entitled thereto or the sum of two million dollars and, if necessary, the trial court shall reduce the award and enter judgment for punitive damages in the maximum amount allowed by this subsection. If the trial court determines that neither item (1) or (2) apply, then the award of punitive damages shall be subject to the maximum amount provided by subsection (A) and the trial court shall reduce the award and enter judgment for punitive damages in the maximum amount allowed by subsection (A).

(C) However, when the trial court determines one of the following apply, there shall be no cap on punitive damages:

(1) at the time of injury the defendant had an intent to harm and determines that the defendant's conduct did in fact harm the claimant; or

(2) the defendant has pled guilty to or been convicted of a felony arising out of the same act or course of conduct complained of by the plaintiff and that act or course of conduct is a proximate cause of the plaintiff's damages; or

(3) the defendant acted or failed to act while under the influence of alcohol, drugs, other than lawfully

prescribed drugs administered in accordance with a prescription, or any intentionally consumed glue, aerosol, or other toxic vapor to the degree that the defendant's judgment is substantially impaired.

S.C. Code Ann. § 15-32-530(A)–(C) (Supp. 2020). We find the language of subsection (A) unambiguously reveals the legislature's intent to require trial courts to reduce punitive damages awards in excess of "the greater of three times the amount of compensatory damages . . . or the sum of five hundred thousand dollars," unless exempt under subsection (B) or (C). *Id.* § 15-32-530(A); *see Media Gen. Commc'ns, Inc. v. S.C. Dep't of Revenue*, 388 S.C. 138, 148, 694 S.E.2d 525, 530 (2010) ("Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." (quoting *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000))); *Ventures S.C., LLC v. S.C. Dep't of Revenue*, 378 S.C. 5, 8–9, 661 S.E.2d 339, 341 (2008) ("The statute's language is considered the best evidence of legislative intent.").

Subsection (A) begins by stating "[e]xcept as provided in subsections (B) and (C)," indicating that the statute applies to all cases not specifically excluded by those subsections. S.C. Code Ann. § 15-32-530(A); *see Hodges*, 341 S.C. at 87, 533 S.E.2d at 582 ("The enumeration of exclusions from the operation of a statute indicates that the statute should apply to all cases not specifically excluded." (quoting Norman J. Singer, *Sutherland Statutory Construction* § 47.23, at 227 (5th ed. 1992))). In addition, subsection (A) further provides "an award of punitive damages *may not* exceed" a particular sum of money, and the legislature's use of the phrase "may not" is generally construed as mandatory. S.C. Code Ann. § 15-32-530(A) (emphasis added); *see* 82 C.J.S. *Statutes* § 494, at 648 (2009) ("Negative or prohibitory words used in statutory provisions generally are construed as mandatory . . . ."). Moreover, the paragraph at the end of subsection (B) reiterates the legislature's mandatory directive for trial courts to limit punitive damages awards to the amount outlined in subsection (A) if it finds that items (1) and (2) are not applicable. *See* S.C. Code Ann. § 15-32-530(B) (stating "the trial court *shall* reduce the award and enter judgment for punitive damages in the maximum amount allowed by subsection (A)" (emphasis added)); *Wigfall v. Tideland Utils., Inc.*, 354 S.C. 100, 111, 580 S.E.2d 100, 105 (2003) ("The term 'shall' in a statute means that the action is mandatory."). In fact, the only circumstance in which the legislature allows no cap on punitive damages is when the trial court determines that subsection (C) applies. *See* S.C. Code Ann. § 15-32-530(C) (providing three situations in which "there shall be no cap on punitive damages").

We further find the statutory cap on punitive damages is neither an affirmative defense nor an avoidance because it does not affect liability or require new matter to be asserted but instead limits the amount of damages a plaintiff can recover. *See O'Neal v. Carolina Farm Supply of Johnston, Inc.*, 279 S.C. 490, 494, 309 S.E.2d 776, 779 (Ct. App. 1983) ("An affirmative defense conditionally admits the allegations of the complaint, but asserts new matter to bar the action."); *Avoidance*, Black's Law Dictionary 136 (6th ed. 1990) (defining "avoidance" as "the allegation or statement of new matter, in opposition to a former pleading, which, admitting the facts alleged in such former pleading, shows cause why they should not have their ordinary legal effect"); *see e.g.*, *Parker v. Spartanburg Sanitary Sewer Dist.*, 362 S.C. 276, 281, 607 S.E.2d 711, 714 (Ct. App. 2005) (noting the statutory damages cap under the Tort Claims Act "limits the amount of damages recoverable for any claim").

We are not persuaded by the court of appeals' reference to opinions from other jurisdictions in support of its holding that the statutory cap on punitive damages falls within the residuary clause of Rule 8(c), SCRCP. Indeed, the cap lacks a common characteristic of the enumerated affirmative defenses—barring liability for the cause of action—and the inquiry required to be conducted by the trial court in subsections (B) and (C) of the statute does not affect the proof at trial. *But see James v. Lister*, 331 S.C. 277, 283, 500 S.E.2d 198, 201 (Ct. App. 1998) (recognizing a "requirement of pleading matters which may prejudice the opposing party by introducing issues which may affect the proof at trial"). Unlike the additional procedural requirements at issue in *James*—a special finding of gross negligence by the jury and joinder of additional parties—which fundamentally affected both the parties and the proof at trial, no such requirements are involved here. *Id.* at 282, 500 S.E.2d at 201. Instead, the statute requires the trial court to determine whether subsections (B) and (C) are applicable and does not create any issue for the jury to resolve. *See* S.C. Code Ann. § 15-32-530(B)–(C) (Supp. 2020) (requiring the trial court to determine whether an exception to the statutory cap applies); *id.* § 15-32-530(B) (providing the statutory cap on punitive damages may not be disclosed to the jury); *cf. Broome v. Watts*, 319 S.C. 337, 342, 461 S.E.2d 46, 49 (1995) (holding the statutory right to setoff was not an affirmative defense falling within the residuary clause of Rule 8(c), SCRCP, because setoff was required by statute and was not an issue for the jury).

Moreover, affirmative defenses generally shift the burden of proof to the defendant, and we do not believe the legislature intended for section 15-32-530 to shift the burden to Target to prove the applicability of the statutory cap on punitive damages in this case. *See Pike v. S.C. Dep't of Transp.*, 343 S.C. 224, 231, 540 S.E.2d 87, 91 (2000) (acknowledging "the well-established rule that the party

pleading an affirmative defense 'has the burden of proving it'" (quoting *Hoffman v. Greenville Cty.*, 242 S.C. 34, 39, 129 S.E.2d 757, 760 (1963))). The plain language of the statute does not impose a burden on the defendant to prove the cap applies. Rather, the legislature only directs trial courts to determine which level of the cap must be applied in a particular case. Therefore, we hold the statutory cap on punitive damages pursuant to section 15-32-530 must be applied by the trial court where the jury has rendered a verdict for punitive damages exceeding the amount outlined in subsection (A), and in such cases, the trial court is required to conduct the inquiry set forth in subsections (B) and (C), as applicable. Accordingly, we remand this case to the trial court to determine whether the Garrisons' punitive damages award must be reduced.[2]

## C.    Consideration of Potential Harm in Reviewing the Constitutionality of a Punitive Damages Award

Target claims the court of appeals erred in instructing the trial court to consider on remand Denise's potential harm under *Mitchell, Jr. v. Fortis Insurance Company*, 385 S.C. 570, 686 S.E.2d 176 (2009) because the Garrisons presented no evidence supporting any potential harm and instead relied solely on the harm Denise could have suffered had she in fact become infected with a disease. Unlike the plaintiff in *Mitchell*, who presented testimony from a medical expert regarding his potential harm had he not been treated and the minimum expected costs it would take to care for him throughout his life, Target argues the Garrisons did not present any similar testimony, and as a result, the trial court properly refused to consider potential harm in evaluating the constitutionality of their punitive damages award. *See id.* at 581–82, 686 S.E.2d at 182. We disagree.

---

[2] The Garrisons argue that if the statutory cap on punitive damages must be applied, they are entitled to a reduction of the award to two million dollars pursuant to subsection 15-32-530(B)(1) because Target's conduct was "motivated primarily by unreasonable financial gain" and "was known or approved by . . . the person responsible for making policy decisions on behalf of the defendant." S.C. Code Ann. § 15-32-530(B)(1) (Supp. 2020). Indeed, the Garrisons arguably presented evidence to support this claim during direct examination of Target's property maintenance technician when they questioned him regarding Target's practice of letting employees leave work early to save payroll following a change in CEO in 2008. Consequently, there is evidence in the record the trial court may consider on remand to determine whether the Garrisons qualify for this reduction. We, however, express no opinion as to the merits of this argument.

In *Mitchell*, we noted that in analyzing the constitutionality of punitive damages awards under *Gamble v. Stephenson*, 305 S.C. 104, 111–12, 406 S.E.2d 350, 354 (1991) and *BMW of North America v. Gore*, 517 U.S. 559, 574–75 (1996), "the court should consider the disparity between the actual or potential harm suffered by the plaintiff and the amount of the punitive damages award." *Id.* at 587–88, 686 S.E.2d at 185. In reversing the trial court, the court of appeals in this case relied on the United States Supreme Court's decision in *TXO Production Corporation v. Alliance Resources Corporation*, 509 U.S. 443, 460 (1993), which noted, "[i]t is appropriate to consider the magnitude of the *potential harm* that the defendant's conduct would have caused to its intended victim if the wrongful plan had succeeded, as well as the possible harm to other victims that might have resulted if similar future behavior were not deterred." (emphasis in original). In reaching this conclusion, the *TXO* Court reviewed its holding in *Pacific Mutual Life Insurance Company v. Haslip*, 499 U.S. 1 (1991), which expressly addressed the standard for evaluating the potential harm component of punitive damages. Specifically, the Court stated:

> In [*Haslip*] we endorsed the standards that the Alabama Supreme Court had previously announced, one of which was "whether there is a reasonable relationship between the punitive damages award and *the harm likely to result* from the defendant's conduct as well as the harm that actually has occurred[.]"

*TXO*, 509 U.S. at 460 (emphasis added by the *TXO* Court (quoting *Haslip*, 499 U.S. at 21)).

Although Denise did not ultimately contract a disease from the syringe, the trial court erred in failing to consider *any* potential harm in the ratio calculation, including the harm likely to result to other customers due to Target's failure to maintain the parking lot in a reasonably safe condition. Accordingly, we remand the case to the trial court to conduct a thorough review of the constitutionality of the amount of the jury's punitive damages award, which includes consideration of potential harm.

## D. Award of Interest on Punitive Damages Under Rule 68, SCRCP

Denise Garrison argues the court of appeals erred in holding she is not entitled to eight percent interest on the entirety of her damages, including punitive damages, because both Rule 68, SCRCP, and section 15-35-400 (Supp. 2020), which govern the award of interest in the offer of judgment context, specifically state the plaintiff

is entitled to eight percent interest "on the amount of the verdict or award" from the date of the offer to the entry of judgment. We agree.

Rule 68(b), SCRCP, provides in relevant part:

If an offer of judgment is not accepted and the offeror obtains a verdict or determination at least as favorable as the rejected offer, the offeror shall recover from the offeree: . . . (2) if the offeror is a plaintiff, eight percent interest computed on the amount of the verdict or award from the date of the offer to the entry of judgment . . . .

Similarly, section 15-35-400(B) states:

If an offer of judgment is not accepted and the offeror obtains a verdict or determination at least as favorable as the rejected offer, the offeror shall be allowed to recover from the offeree: . . . (2) if the offeror is a plaintiff, eight percent interest computed on the amount of the verdict or award from the date of the offer . . . .

S.C. Code Ann. § 15-35-400(B) (Supp. 2020). We find the language of both the rule and the statute clearly and unambiguously provides that Denise is entitled to eight percent interest on the entire amount of the verdict, including punitive damages. *See Sonoco Prods. Co. v. S.C. Dep't of Revenue*, 378 S.C. 385, 391, 662 S.E.2d 599, 602 (2008) ("The court should give words their plain and ordinary meaning, without resort to subtle or forced construction to limit or expand the statute's operation."). Indeed, we do not perceive any restriction in the rule or statute which prohibits the award of interest on punitive damages, and we refuse to impose such limitation here. *See Hodges v. Rainey*, 341 S.C. 79, 87, 533 S.E.2d 578, 582 (2000) ("When the language of a statute is clear and explicit, a court cannot rewrite the statute and inject matters into it which are not in the legislature's language, and there is no need to resort to statutory interpretation or legislative intent to determine its meaning."); *id.* at 85, 533 S.E.2d at 581 ("Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute.").

We are not an outlier in reaching this conclusion. The court of appeals acknowledged that Connecticut also permits the award of interest on punitive damages in the offer of judgment context. *See Kregos v. Stone*, 872 A.2d 901, 906 (Conn. App. Ct. 2005) (holding the lower court "properly interpreted the word 'recovered' [in Connecticut's offer of judgment statute] to include the entire verdict, both punitive and compensatory damages"). Like Connecticut, we have both a prejudgment interest statute and a separate statute awarding interest in the offer of

judgment context. *See Boulevard Assocs. v. Sovereign Hotels, Inc.*, 861 F.Supp. 1132, 1141 (D. Conn. 1994) (distinguishing between section 37-3a, Connecticut's prejudgment interest statute, and section 52-192a(b), its offer of judgment interest statute). *Compare* S.C. Code Ann. § 34-31-20(A) (2020) ("In all cases of accounts stated and in all cases wherein any sum or sums of money shall be ascertained and, being due, shall draw interest according to law, the legal interest shall be at the rate of eight and three-fourths percent per annum."), *with* S.C. Code Ann. § 15-35-400(B) (Supp. 2020) (providing that when a plaintiff's offer of judgment is not accepted and she obtains a verdict or determination at least as favorable as her offer, she is entitled to receive eight percent interest on the amount of the verdict or award from the date of the offer). In *Boulevard Associates*, the United States District Court for the District of Connecticut recognized that the award of interest under an offer of judgment statute serves the purpose "of promoting 'fair and reasonable compromise of litigation without trial.'" 861 F.Supp. at 1141 (quoting *Crowther v. Gerber Garment Tech., Inc.*, 513 A.2d 144, 151 (Conn. App. Ct. 1986)); *see also Majorowicz v. Allied Mut. Ins. Co.*, 569 N.W.2d 472, 481 (Wis. Ct. App. 1997) ("The objective of [Wisconsin's offer of settlement interest statute] is to encourage pretrial settlement and avoid delays.").

Here, however, the court of appeals relied on two cases from the Supreme Courts of Alaska and Nevada to hold the purpose of prejudgment interest is to compensate the plaintiff, while the purpose of punitive damages is to punish the defendant. *See Haskins v. Shelden*, 558 P.2d 487, 494 (Alaska 1976) ("Prejudgment interest is in the nature of compensation for use by defendant of money to which plaintiff is entitled from the time the cause of action accrues until the time of judgment. It is not meant to be an additional penalty."); *Ramada Inns, Inc. v. Sharp*, 711 P.2d 1, 2 (Nev. 1985) ("Prejudgment interest is viewed as compensation for use by defendant of money to which plaintiff is entitled from the time the cause of action accrues until the time of judgment; it is not designed as a penalty."). We find those cases are distinguishable because they considered prejudgment interest rather than interest awarded in the offer of judgment context. Therefore, we hold Denise is entitled to eight percent interest on the entirety of her damages award, including punitive damages, pursuant to Rule 68, SCRCP.

## IV. CONCLUSION

Based on the foregoing, we hold there was sufficient evidence upon which the jury could reasonably find that Target had constructive notice of the syringe in its parking lot and failed to discover and remove it in the exercise of due care. In addition, we hold the statutory cap on punitive damages pursuant to section 15-32-530 is not required to be pled by the defendant as an affirmative defense in order to

apply in a particular case. Instead, the cap must be applied by the trial court where the jury has rendered a verdict for punitive damages exceeding the amount outlined in subsection (A), and in such cases, the trial court is required to conduct the inquiry set forth in subsections (B) and (C), as applicable.[3] We further hold the court of appeals properly instructed the trial court to consider on remand the potential harm caused by Target's conduct in evaluating the constitutionality of the amount of the Garrisons' punitive damages award. Lastly, we hold Denise is entitled to eight percent interest on the entirety of her damages award, including punitive damages, pursuant to Rule 68, SCRCP. Accordingly, we affirm as modified in part, reverse in part, and remand this matter to the trial court.

On remand, because the jury's $4.51 million punitive damages award exceeds the amount provided in subsection 15-32-530(A), the trial court shall determine whether the award must be reduced by conducting the inquiry set forth in subsections (B) and (C) of the statute, as applicable. The trial court shall also consider potential harm in evaluating the constitutionality of the amount of the punitive damages

---

[3] The Garrisons also challenge the constitutionality of the statutory cap on punitive damages pursuant to section 15-32-530. However, we find this issue is not preserved for our review. Notably, the Garrisons failed to raise the issue to the court of appeals in their petition for rehearing. *See* Rule 242(d)(2), SCACR ("Only those questions raised in the Court of Appeals and in the petition for rehearing shall be included in the petition for writ of certiorari as a question presented to the Supreme Court."). In addition, it appears the Garrisons first raised the issue to the trial court in their response to Target's motion for a JNOV, and the trial court did not address the issue in its order because it granted Target's motion, striking the jury's punitive damages award in its entirety. Subsequently, the Garrisons filed an expedited motion for reconsideration but did not request the trial court to make a ruling on the issue. *See Foster v. Foster*, 393 S.C. 95, 99, 711 S.E.2d 878, 880 (2011) ("In order to preserve an issue for appellate review, a party must both raise that issue to the trial court and obtain a ruling."); *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) ("If the losing party has raised an issue in the lower court, but the court fails to rule upon it, the party must file a motion to alter or amend the judgment in order to preserve the issue for appellate review."). For these reasons, we find the issue is unpreserved. Regardless, we decline to address constitutional issues where it is unnecessary to the resolution of the case. *See In re McCracken*, 346 S.C. 87, 92, 551 S.E.2d 235, 238 (2001) ("[I]t is this Court's firm policy to decline to rule on constitutional issues unless such a ruling is required.").

award.  Finally, the trial court shall award eight percent interest on the entirety of Denise's damages award, including punitive damages.

**AFFIRMED AS MODIFIED IN PART, REVERSED IN PART, AND REMANDED.**

**KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**